STATE OF NORTH CAROLINA v. JOHN LEWIS WRAY, JR.

No. COA09-304

(Filed 17 August 2010)

**1. Appeal and Error— preservation of issues—defendant's right to counsel at trial—no objection required**

The Court of Appeals had jurisdiction to hear defendant's argument that the trial court erred in finding that defendant had forfeited his right to counsel at trial and was required to represent himself. Defendant was not required to object to the trial court's ruling in order to preserve the issue for appeal.

**2. Constitutional Law— Sixth Amendment right to counsel— not forfeited**

The trial court erred by ruling that defendant had "forfeited" his right to representation by counsel. There was evidence in the record that defendant was not competent to represent himself, the record did not establish that defendant engaged in the kind of serious misconduct associated with forfeiture of the right to counsel, defendant's misbehavior was the same evidence that cast doubt on his competence, and defendant was given no opportunity to be heard or to participate in the hearing at which the trial court ruled that he had forfeited his right to counsel.

STEPHENS, Judge, concurring.

Appeal by Defendant from judgment entered 16 July 2008 by Judge Forrest D. Bridges in Cleveland County Superior Court. Heard in the Court of Appeals 3 September 2009.

*Attorney General Roy Cooper, by Assistant Attorney General Michael D. Youth, for the State.*

*Faith S. Bushnaq, for Defendant.*

BEASLEY, Judge.

John Wray, Jr. (Defendant) appeals from judgment entered on convictions of possession with intent to sell or deliver cocaine, and having attained habitual felon status. We reverse and remand.

Defendant was arrested in May 2007 for possession with intent to sell or deliver cocaine and sale of cocaine, both offenses alleged to have occurred on 27 September 2006. On 16 July 2007 a Cleveland County Grand Jury indicted him for these offenses and for habitual felon status. Pretrial hearings were conducted on 6 November 2007, 8 January 2008, 5 February 2008, 16 April 2008, and 6 June 2008. Defendant was tried at the 14 July 2008 Criminal Session of Superior Court in Cleveland County, North Carolina. On 15 July 2008 the jury returned a verdict of guilty of possession with intent to sell or deliver cocaine, but was unable to reach a verdict on the sale charge. On 16 July 2008 Defendant was found to have attained habitual felon status. He was sentenced to a term of 136 to 173 months in prison.

### Jurisdiction and Standard of Review

[1] After the verdicts were announced, Defendant gave notice of appeal in open court and proper appellate entries were made. An appellate defender was appointed by the trial court to represent Defendant on 22 July 2008. Appellate counsel timely prepared and filed the record on appeal and the briefs in this matter.

This court has jurisdiction over this matter based upon N. C. Gen. Stat. § 15A-979(b). The chief ground of appeal in this matter concerns the trial court's finding that Defendant had forfeited his right to counsel at trial and was required to represent himself. The State argues that the court lacks jurisdiction to hear this issue under the Rules of Appellate Procedure because the matter was not preserved by timely objection to the court's order by Defendant under N.C. R. App. P. 10 (b)(1). "In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion[.]" N.C. R. App. P. 10 (b)(1). The State asserts that under *State v. Garcia*, 358 N. C. 382, 410, 597 S.E.2d 724, 745 (2004), even "structural errors" must be preserved. *Id.* at 411, 597 S.E.2d at 745.

For reasons discussed hereinafter, we disagree with the State's position that Defendant was required to object to the court's ruling that Defendant forfeited his right to counsel. As such, we proceed to the merits of Defendant's appeal.

In effect, the State's position would mandate that a defendant, representing himself, would have to object to a trial court's ruling as to the right to counsel, and then represent himself. For a defendant who is exhibiting characteristics of mental illness, this requires a depth of intellectual prowess which a defendant would be unlikely to

possess. Thus, the State's position is impractical and would prevent
review by this State's appellate courts of a trial court's decision to
deny appointed counsel, even though the right to counsel is a funda-
mental right under the Sixth Amendment of the United States
Constitution and the North Carolina Constitution. *See State v. James*,
111 N.C. App. 785, 789, 433 S.E.2d 755, 757 (1993) (right to counsel is
a fundamental right).

Given the procedural posture of this case, and the timing of the
United States Supreme Court's decision in *Indiana v. Edwards* 554
U.S. 164, 171 L. Ed. 2d 345 (2008), discussed *infra*, N.C. Gen. Stat.
§ 15A-1446(d)(19) (2007) of our General Statutes specifically allows
review of this issue presented in this appeal. The holding of *Edwards*
applies retroactively to the case *sub judice*, because this appeal is
before us on direct review. *State v. Zuniga*, 336 N.C. 508, 513, 444
S.E.2d 443, 446 (1994); *see Teague v. Lane*, 489 U.S. 288, 103 L. Ed. 2d
334 (1989). Although it is not impossible, it is unlikely that the trial
court applied *Edwards* in this case, even though *Edwards* was
decided about a month before Defendant's trial. As a result, we
assume that the trial court and Defendant were unaware of the sig-
nificance of *Edwards* to the proceedings below. Moreover, we need
not speculate as to whether the trial court correctly applied the pre-
*Edwards* standards, because this proceeding was tried post-*Edwards*
and *Edwards* is controlling.

Where significant changes in the law occur during the pendency
of a trial, Rule 10 (b)(1) of the N. C. Rules of Appellate Procedure per-
mits review of issues that "by rule or law [are] deemed preserved".
N.C. R. App. P. 10(b)(1). Section 15A-1446(d)(19) allows for appellate
review of a trial court's order where "[a] significant change in law,
either substantive or procedural, applies to the proceeding leading to
the defendant's conviction or sentence and retroactive application of
the changed legal standard is required." N.C. Gen. Stat. § 15A-1446(d)(19).
The State's argument that this Court should not review Defendant's
assignment of error on this issue because the Defendant failed to
object is overruled.

Because our analysis involves a question of law under section
15A-1446(d), we review this issue *de novo*. *See Piedmont Triad Reg'l Water
Auth. v. Sumner Hills, Inc.*, 353 N.C. 343, 348, 543 S.E.2d 844, 848 (2001)
("It is well settled that *de novo* review is ordinarily appropriate in cases
where constitutional rights are implicated."); *Carson v. Carson*, —— N.C.
App. ——, —— 680 S.E.2d 885, 888 (2009) (matters of law reviewed *de novo*).

**[2]** Defendant argues on appeal that the trial court erred by ruling that he had "forfeited" his right to representation by counsel, on the grounds that there was evidence that Defendant was not competent to represent himself. We agree.

Resolution of the issues raised on appeal requires consideration of the right to counsel, waiver of the right to counsel, forfeiture of the right to counsel, competence to waive the right to counsel, and competence to proceed without counsel.

"The right to counsel is guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article I of the North Carolina Constitution. A part of this right includes the right of an indigent defendant to appointed counsel. N.C. Gen. Stat. § 7A-450 [(2007)]." *State v. Montgomery*, 138 N.C. App. 521, 524, 530 S.E.2d 66, 68 (2000) (citing *State v. McFadden*, 292 N.C. 609, 234 S.E.2d 742 (1977), and *Gideon v. Wainwright*, 372 U.S. 335, 9 L. Ed. 2d 799 (1963)). In certain situations a defendant may lose this right:

> Although the loss of counsel due to defendant's own actions is often referred to as a waiver of the right to counsel, a better term to describe this situation is forfeiture. "Unlike waiver, which requires a knowing and intentional relinquishment of a known right, forfeiture results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right.". . . "[A] defendant who misbehaves in the courtroom may forfeit his constitutional right to be present at trial," and "a defendant who is abusive toward his attorney may forfeit his right to counsel."

*Montgomery*, 138 N.C. App. at 524-25, 530 S.E.2d at 69 (quoting *United States v. Goldberg*, 67 F.3d 1092, 1100 (3d. Cir. Pa. 1995), and *United States v. McLeod*, 53 F.3d 322, 325 (11th Cir. Ala. 1995)).

The right to counsel is guaranteed by the Sixth Amendment to the U.S. Constitution. "The construction placed by the United States [S]upreme [C]ourt upon the United States [C]onstitution is binding upon all[.]" *State ex rel. Taylor v. Vann*, 127 N.C. 243, 249, 37 S.E. 263, 265 (1900). "[F]ederal law, as defined by the Supreme Court, may be either a generalized standard enunciated in the Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." *Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir. N.Y. 2002).

> Thus in *Gilchrist* [*v. O'Keefe*, 260 F.3d 87 (2d Cir. N.Y. 2001),] we considered whether a state court unreasonably refused to assign

new counsel to a criminal defendant who physically assaulted his court-appointed attorney. In examining the difference between waiver and forfeiture of the right to counsel, we first noted that the Supreme Court had not spoken on the question of forfeiture of this right[.] . . . We then recognized, however, that the Court, through its general precedents . . . had established that the right to counsel is fundamental. The remaining question . . . [was] whether the state court's failure to appoint new counsel was an unreasonable application of this more general precedent[.] We concluded that it was not.

*Kennaugh*, 289 F.3d at 43 (citations omitted).

"However, with the exception of decisions of the United States Supreme Court, federal appellate decisions are not binding upon either the appellate or trial courts of this State." *State v. Adams*, 132 N.C. App. 819, 820, 513 S.E.2d 588, 589 (1999) (citing *State v. McDowell*, 310 N.C. 61, 74, 310 S.E.2d 301, 310 (1984)) (holding that state courts should treat "decisions of the United States Supreme Court as binding and accord[] to decisions of lower federal courts such persuasiveness as these decisions might reasonably command").

Although the United States Supreme Court has never directly addressed forfeiture of the right to counsel, the Court's other holdings demonstrate reluctance to uphold forfeiture of a criminal defendant's U.S. Constitutional rights, except in egregious circumstances. For example, in *Illinois v. Allen*, 397 U.S. 337, 25 L. Ed. 2d 353 (1970), the defendant "argue[d] with the judge in a most abusive and disrespectful manner," told the trial court that "you're [the judge] going to be a corpse here" and "tore the file which his attorney had and threw the papers on the floor." When the defendant continued this behavior after being warned, the trial court "ordered the trial to proceed in the petitioner's absence." *Allen*, 397 U.S. at 340-41, 25 L. Ed. 2d at 357. On appeal, the Supreme Court stated:

Although mindful that courts must indulge every reasonable presumption against the loss of constitutional rights, we explicitly hold today that a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom.

*Id.* at 343, 25 L. Ed. 2d at 357 (citations omitted). More recently, in *Giles v. California,* —— U.S. ——, ——, 171 L. Ed. 2d 488, 494 (2008), the defendant appealed following a trial at which hearsay statements were introduced under a purported "exception" to the Sixth Amendment's confrontation right, based on a defendant's misconduct:

> [The Court] held that the admission of [the witness'] unconfronted statements at Giles' trial did not violate the Confrontation Clause as construed by *Crawford [v. Washington,* 541 U.S. 36, 158 L. Ed. 2d 177 (2004)] because *Crawford* recognized a doctrine of forfeiture by wrongdoing. It concluded that Giles had forfeited his right to confront [the witness] because . . . his intentional criminal act made [her] unavailable to testify.

*Id.* The Court "decline[d] to approve an exception to the Confrontation Clause unheard of at the time of the founding or for 200 years thereafter" and held that:

> [T]he guarantee of confrontation is no guarantee at all if it is subject to whatever exceptions courts from time to time consider "fair." It is not the role of courts to extrapolate from the words of the Sixth Amendment to the values behind it, and then to enforce its guarantees only to the extent they serve (in the courts' views) those underlying values. The Sixth Amendment seeks fairness . . . through very specific means (one of which is confrontation) . . . [and] "does not suggest any open-ended exceptions from the confrontation requirement to be developed by the courts."

*Id.* at ——, 171 L. Ed. 2d at 505 (quoting *Crawford,* 541 U.S. at 54, 158 L. Ed. 2d at 177). We conclude that, notwithstanding the absence of directly controlling United States Supreme Court precedent, the Court has generally applied a presumption against the casual forfeiture of U.S. Constitutional rights.

Additionally, the federal and state courts that have addressed forfeiture have restricted it to instances of severe misconduct.

> In extreme cases, some courts have found that a defendant forfeited the right to counsel[.]. . .n.23 [citing] *United States v. Thomas,* 357 F.3d 357, 363 (3rd Cir. Pa. 2004) (defendant threatened his attorney, was verbally abusive to him, tore up his correspondence, refused to cooperate in producing a witness list, hung up on him during a telephone conversation, [and] attempted to force him to file frivolous claims); *United States v. Leggett,* 162 F.3d 237, 240, 250 (3rd Cir. Pa. 1998) (defendant forfeited right to

counsel where he punched lawyer, knocked him to the ground, then began to choke, scratch and spit on him); *United States v. Travers*, 996 F. Supp. 6, 17 (S.D. Fla. 1998) (finding forfeiture resulted from defendant's "persistently abusive, threatening, and coercive" dealings with his attorneys . . .); *United States v. McLeod*, 53 F.3d 322, 325-26 (11th Cir. Ala. 1995) (defendant forfeited his right to counsel where he was abusive toward his attorney, threatened to harm him and sue him, and asked him to engage in unethical conduct).

*Gladden v. State*, 110 P.3d 1006, 1012 (Alaska Ct. App. 2005). A leading case on this issue, noted that "the right to counsel has long been considered 'fundamental.' " *Goldberg*, 67 F.3d at 1097 (citing *Gideon*, 372 U.S. 335, 9 L. Ed. 2d 799) (right to counsel so fundamental that it is binding on the states through the doctrine of incorporation). The Court held that:

> Recognizing the difference between forfeiture and waiver by conduct is important. First, because of the drastic nature of the sanction, forfeiture would appear to require extremely dilatory conduct. . . . We have never explicitly adopted a pure forfeiture analysis[.] . . . Even if we were to accept a forfeiture argument, which as we have noted requires extremely serious misconduct, the facts of this case would not support such a result.

*Goldberg*, 67 F.3d at 1101-02 (internal quotation marks omitted). The general consensus has been that "an accused may forfeit his right to counsel by a course of serious misconduct towards counsel that illustrates that lesser measures to control defendant are insufficient to protect counsel and appointment of successor counsel is futile. . . . Forfeiture of counsel should be a court's last resort[.]" *King v. Superior Court*, 132 Cal. Rptr. 2d 585, 588 (Cal. 3d Dist. Ct. App. 2003).

The issue was addressed by this Court in *State v. Montgomery*, in which the defendant was successively represented by four different lawyers: two court-appointed attorneys and two privately retained attorneys. When the trial court denied a withdrawal motion by defendant's second privately retained attorney, the defendant twice disrupted court with profanity and received two 30 day jail sentences for contempt of court. During trial, the defendant threw water at his privately retained attorney. He received another 30 day contempt sentence, and was charged with simple assault. In these factual circumstances, this Court held that "defendant forfeited his right to counsel and the trial court did not err by requiring him to proceed *pro se*[,]"

*State v. Montgomery*, 138 N.C. App. 521, 523, 530 S.E.2d 66, 68 (2000), and held:

> defendant was disruptive in the courtroom on two occasions, resulting in the trial being delayed. . . . [D]efendant refused to cooperate with [retained counsel] and assaulted him, resulting in an additional month's delay in the trial. Such purposeful conduct and tactics to delay and frustrate the orderly processes of our trial courts simply cannot be condoned. Defendant, by his own conduct, forfeited his right to counsel[.]

*Id.* at 525, 530 S.E.2d at 69 (citations omitted). Thus, North Carolina has also found forfeiture where the defendant engaged in serious misconduct. Other North Carolina cases have used the term "forfeiture" but have addressed factually distinguishable situations that <u>do not</u> depend on a determination that the defendant has engaged in deliberate serious misconduct.

### Competence to Waive Representation by Counsel

The United States Supreme Court recently addressed the relationship between the right to self-representation and the competence to waive the right to counsel:

> The two cases that set forth the Constitution's "mental competence" standard, specify that the Constitution does not permit trial of an individual who lacks "mental competency." *Dusky* defines the competency standard as including both (1) "whether" the defendant has "a rational as well as factual understanding of the proceedings against him" and (2) whether the defendant "has sufficient present ability to *consult with his lawyer* with a reasonable degree of rational understanding." *Drope* repeats that standard[.] . . . Neither case considered the mental competency issue presented here, namely, the relation of the mental competence standard to the right of self-representation.

*Indiana v. Edwards*, 554 U.S. 164, ——, 171 L. Ed. 2d 345, 352 (2008) (quoting *Dusky v. United States*, 362 U.S. 402, 402, 4 L. Ed. 2d 824, 824 (1960); and *Drope v. Missouri*, 420 U.S. 162, 171, 43 L. Ed. 2d 103, 113 (1975)). The *Edwards* Court considered the situation of "a criminal defendant [who] has sufficient mental competence to stand trial" and "whether the Constitution permits a State to . . . insist[] upon representation by counsel at trial—on the ground that the defendant lacks the mental capacity to conduct his trial defense unless represented. . . . [We] conclude that the answer to this question is yes."

*Edwards*, 554 U.S. at ——, 171 L. Ed. 2d at 355. The Court held that "the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial under *Dusky* but who . . . are not competent to conduct trial proceedings by themselves." *Id.* at ——, 171 L. Ed. 2d at 357.

In *State v. Lane*, 362 N.C. 667, 669 S.E.2d 321 (2008), the Supreme Court of North Carolina applied *Edwards*, remanding to the trial court for determination of whether:

> (1) At the time defendant sought to represent himself in this matter, did he come within the category of "borderline-competent" (or "gray-area") defendants, . . . defined by the Supreme Court of the United States as parties "competent enough to stand trial . . . but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves"?

*Id.* at 668, 669 S.E.2d at 322 (citing *Edwards*, 554 U.S. at ——, 171 L. Ed. 2d at 357). The Court directed the trial court to proceed to the second issue "if the first inquiry is answered in the affirmative":

> (2) Given that the United States Constitution permits judges to preclude self-representation for defendants adjudged to be "borderline-competent" based on a "realistic account of the particular defendant's mental capacities," the court shall consider whether the court in its discretion would have precluded self-representation for defendant and appointed counsel for him pursuant to *Indiana v. Edwards*, and if so, whether in this case defendant was prejudiced by his period of self-representation.

*Id.*

In the instant case, we conclude that the record fails to support the trial court's ruling that Defendant had forfeited his right to appointed counsel. We reach this conclusion for several reasons. First, the record includes significant evidence that Defendant may be a person whose competence is in the "gray area" discussed in *Edwards*. Secondly, the record does not establish that Defendant engaged in the kind of serious misconduct associated with forfeiture of the right to counsel. Thirdly, the evidence of Defendant's misbehavior is the same evidence that casts doubt on his competence. Finally, Defendant was given no opportunity to be heard or to

participate in the hearing at which the trial court ruled that he had forfeited his right to counsel.

Defendant's representation by counsel was addressed at several pretrial hearings. Defendant was originally represented by Colin McWhirter, who was appointed on 1 June 2007, and was allowed to withdraw following a hearing conducted 6 November 2007. The record indicates the tape recording of the proceedings was lost, but those in attendance recall that McWhirter was allowed to withdraw because of a breakdown in the attorney-client relationship between Defendant and McWhirter. Following McWhirter's withdrawal, the court appointed D.M. Schweppe to represent Defendant.

A hearing was conducted on 8 January 2008 at which Schweppe moved to withdraw due to a conflict of interest, and informed the trial court that Defendant might be called as a defense witness for another of Schweppe's clients. Defendant responded somewhat incoherently that he "[didn't] know what Mr. Schweppe's talking about[]" and that:

> DEFENDANT: I had a $500 misdemeanor bond for possession. On my motion of discovery it's got habituals with the same offense numbers as on my original papers—make my bond double $10,000. My charge was in district [court]. They took my case out of district court, put in superior on 7/16—true bill indictment. I never got served on this. I mean, I got served a paper from the magistrate. I came to court November 6th. I addressed the Court with the papers I had with nobody's signatures on them—failure to appear. I was out on a $500 bond. I've been in jail 106 days now. I ain't had no probably [sic] cause hearing or nothing. . . . [T]hose people over there in the annex say my paperwork is invalid.

The trial court granted Schweppe's request to withdraw due to a conflict of interest, and appointed John Church to represent Defendant. However, the issues raised by Defendant at this hearing—the nature and severity of the charges against him, the validity of the charging documents filed against Defendant, the circumstances of his incarceration, the legality of his being in jail, the amount of bond, questioning its increase from $500 to $10,000—continued to preoccupy Defendant during successive pretrial hearings.

The next pretrial hearing was conducted on 5 February 2008. At this hearing, Defendant asked the trial court to remove Church as his attorney, because Church had not visited him promptly after being

appointed, and had "talked hateful" to Defendant's wife. Defendant repeatedly insisted that he "don't supposed to be in jail" and told the court that the order for arrest charging him with failure to appear was invalid, that he was not charged as an habitual felon, that he had been indicted twice for the same charge, that the use of "ink pens" on certain charging documents was a violation of law, and that he was "maced and sprayed" while in custody. The trial court and defense counsel discussed the fact that Defendant had written each of them letters every day, asserting that he should not be in jail, and Church complained that Defendant had "accused [him] of entering into a conspiracy with Colin McWhirter and somebody from the District Attorney's office to keep him in jail." Defendant's response did nothing to clarify the legal issues:

> DEFENDANT: . . . I don't supposed to be in jail. Now, if I got all the proof laying right here in front of this table, I don't supposed to be in jail, why is they still—still holding me in jail? I mean, can—can anybody pull up this FTA and see all this condition under these papers? They should state it on there.

Defendant and Church then quarreled in court about when Church visited Defendant in jail, what transpired during the visit, and what Church had told Defendant about his case. Church complained that Defendant "contradicts everything I say, Judge." At this point, the trial court ruled that he would grant Church's request to withdraw and explained to Defendant:

> THE COURT: . . . You have been through three of the best lawyers in Cleveland County. You have demonstrated that you are <u>unwilling or unable to work with them in the preparation of your defense</u>. . . . <u>I believe you're a slow learner for some reason</u>. If you fail to cooperate with your next lawyer, I want you to understand by that failure, you will forfeit your right to court-appointed counsel. Do you understand that?

(emphasis added). Defendant's response did not demonstrate his understanding of the trial court's warning; instead, he raised the subject of self-representation:

> DEFENDANT: Sir, with due respect, I don't want no lawyer. I want to represent myself. Save the State some money. I don't want no lawyer.

. . . .

STATE v. WRAY

[206 N.C. App. 354 (2010)]

THE COURT: Do you understand what a mistake you're about to make?

DEFENDANT: I'm just charged with some misdemeanors, sir.

The trial court again explained to Defendant that he was charged with felony offenses and as an habitual felon, and that he faced up to forty years in prison. The court warned Defendant of the consequences of self-representation, and asked if Defendant understood them. Defendant's answer was still not responsive to the trial court's concerns:

DEFENDANT: Okay. Since I'm representing myself, I mean, I've been in here. I went to a nurse and a doctor and she knows about that bone disease in my leg—my right ankle. I mean, I've been in here a hundred and forty days . . . [C]an I get a bond reduction? . . . I mean, I don't understand why I'm in jail and I don't supposed to be in jail.

The trial court ruled:

THE COURT: I'm still going to appoint Mr. Ditz for the time being, to represent him. . . . [I]f he still wants to waive his right to court appointed counsel, I'll let that matter come back in front of another Court[.] . . . In the event that he wishes to represent himself, Mr. Ditz will still be kept on the case as standby counsel, because frankly, it is obvious to me that Mr. Wray is incapable of representing himself effectively.

(emphasis added). Following Ditz's appointment, Defendant wrote letters to the court stating that he did not wish to be represented by Ditz. A hearing was conducted on 16 April 2008 at which Ditz asked the trial court to clarify Defendant's situation with respect to counsel. Ditz explained to the trial court, "Your Honor, if I could give a little bit of background. I've represented Mr. Wray on other cases and have never really had a problem with them. But this case in particular, I'm the fourth attorney." The court explained to Defendant that he did not have a right to demand substitute counsel, and that he needed to choose between self-representation or representation by Ditz. In response, Defendant complained that he "don't supposed to be in jail" and that Ditz would not meet with him in jail. The court tried unsuccessfully to direct Defendant to focus on the question of representation rather than other issues:

THE COURT: What do you want to do about your attorney situation? Do you want Mr. Ditz to represent you?

DEFENDANT: He ain't even come and talked to me; how I gone be ready for a trial? I got a bone disease in my right ankle. I can't get no help or nothin' over there. The nurses, they aware of my situation. . . . My order for arrest sheet didn't have no signature of a judge or magistrate. . . .

THE COURT: So what do you want to do about your trial? I can't understand what you want to do about your lawyer situation. . . .

DEFENDANT: I keep my lawyer. I'll work with Mr. Ditz. . . .

MR. DITZ: . . . I have tried to talk to Mr. Wray about his cases. . . . But every time I try to talk to him about the case, he wants to talk about all these other matters that really aren't at issue. . . .

Defendant then engaged the court in further discussion about his arrest for failure to appear and whether he was properly notified of his court date. The trial court reminded Defendant that these matters were "water under the bridge. The question is, do you want a trial tomorrow with Mr. Ditz?" Defendant consulted with Ditz and informed the court that he would be willing to be represented by Ditz, provided he could view the video that law enforcement officers had taken of the drug buy in his case. However, when Defendant learned that he would have to wait one more day to see the video, Defendant inexplicably changed his mind:

THE COURT: I apologize, I did tell you tomorrow, so does that change anything for you?

DEFENDANT: As a matter of fact, it does. . . . [T]his is my life right here, and I see Mr. Ditz—He's speculating on my case like, me and him, so I'd rather not have.

The trial court explained to Defendant again that his choice was either self-representation or representation by Ditz, and that Defendant might be subject to implied waiver of counsel:

THE COURT . . . If you can't get along with your lawyer . . . you can be found to have waived your right to court-appointed counsel and you'll be representing yourself, even if you don't want to represent yourself. . . .

DEFENDANT: I don't need Mr. Ditz as my attorney.

THE COURT: Do you want to represent yourself?

DEFENDANT: No.

THE COURT: You want a different court-appointed attorney?

DEFENDANT: Uh-huh (affirmative).

The court required Ditz to continue to represent Defendant, and ordered that the earlier pretrial hearings be transcribed, to facilitate the court's determination of whether Defendant should receive new appointed counsel.

Defendant then told the court that he did not want to be represented by Ditz, and wanted to represent himself. The court reminded Defendant of the possible prison sentence he faced and asked him whether he was certain that he wanted to represent himself, and Defendant replied with a *non-sequitur*. The trial court ruled that, because Defendant kept changing his mind and would not state unequivocally that he wanted to appear *pro se*, the court would not remove Ditz, but would order the earlier hearings transcribed for use at a future hearing.

The last pretrial hearing was conducted almost two months later, on 6 June 2008. The hearing was in response to Ditz's motion to withdraw as Defendant's counsel, and the transcript consists primarily of the court's ruling. The trial court recited the history of Defendant's representation by McWhirter, Schweppe, Church, and Ditz, and noted that Schweppe had withdrawn due to a conflict of interest, but that McWhirter and Church were allowed to withdraw due to deterioration in the attorney-client relationship. The court stated that Ditz was "being removed from the case, once again because there has been a total deterioration in the attorney/client relationship." The trial court ruled in relevant part that:

> THE COURT: The apparent source of the conflict . . . relates to the Defendant's apparent obsession with certain matters pertaining to the circumstances of his being in custody. . . . Defendant insists upon contending that he should not be in jail, that he is actually charged with a misdemeanor rather than a felony, that the order for his arrest was invalid because it was not signed . . . that a computer print out shows . . . different court dates, and therefore he should not have been . . . arrest[ed] for his failure to appear on one of those court dates.

(emphasis added). The trial court stated that Defendant had been warned that his failure to "cooperate with counsel in the preparation of his defense" could result in "a forfeiture of his right to counsel" and that:

THE COURT: In any event, the Defendant's conduct has been of such a nature so as to amount to and justify a forfeiture of his right to court-appointed counsel. . . .

The Court concludes that this Defendant, by his conduct, has now forfeited his right to court-appointed counsel . . . and that the Defendant proceed to trial *pro se.* . . .

Since I'm entering this order, I'm directing that the matter be rescheduled for trial during a term of court which I will preside over, simply because <u>I don't want to subject any other judge to the horrors of having to deal with Mr. Wray representing himself</u>. . . .

(addressing Defendant): What that means is, is you're going to get to represent yourself[.] . . But I'm not finding that you have waived counsel and you're choosing to represent yourself, I'm finding that by your conduct you have forfeited your right to court-appointed counsel. <u>You have misbehaved to the point that I'm taking away your right to a court-appointed lawyer</u>.

(emphasis added).

We conclude that the record raises questions about Defendant's competence to represent himself. Defendant appeared not to grasp his legal situation and was unable to focus on pertinent legal issues. Indeed, the trial court explicitly stated it was "obvious" that Defendant was incapable of representing himself effectively.

Further, although the record indicates that Defendant was disagreeable, suspicious, and obsessed with legally irrelevant matters pertaining to his incarceration and may have indeed been disruptive and inappropriate by his gestures, tone and manners by which he addressed his counsel and the court, the record before us does not establish that Defendant's difficult personality constituted the kind of serious misconduct that would justify allowing his counsel to withdraw on the grounds that Defendant had forfeited his right to counsel. There is no evidence that Defendant used profanity in court, threatened counsel or court personnel, was abusive, or was otherwise inappropriate. We conclude that the record fails to establish that Defendant engaged in serious misconduct. Moreover, the evidence of Defendant's misbehavior is the same evidence that is pertinent to the issue of his competence. That is, the Defendant's misbehavior consists of his "apparent obsession" with irrelevancies, rather than abusive or disruptive actions.

In this regard, we note that the trial court did not articulate the nature of Defendant's misbehavior.

> Defendant's next contention is that there is no showing in the record as to what specific acts and conduct were relied upon by the court as the basis for the action taken. This contention also has merit. . . . The basis of the order appears to be the court's finding: "[T]hat the defendant in this case, by his words and conduct, refuses to cooperate with his court-appointed attorney[.]" . . . Whether the 'words and conduct' refer solely to defendant's act of voluntarily standing, other acts or statements not reflected by the record, or a combination of circumstances is not made to appear.

*State v. Dickerson*, 9 N.C. App. 387, 390-91, 176 S.E.2d 376, 378 (1970) (citations omitted).

Finally, we are concerned about the summary nature of the court's ruling. The record establishes that, at the time the trial court ordered Defendant to proceed *pro se*, the Defendant had not been in court for seven weeks, and had not been before Judge Bridges for four months. No sworn testimony or evidence was introduced at this hearing, and the court did not question Defendant about his current understanding of his legal situation. Defendant had no chance to respond to his counsel's motion to withdraw, and was provided no opportunity to testify or otherwise participate in the hearing before the trial court's order. Defendant's participation in the hearing consisted entirely of the following remarks, made after the trial court ruled that he had lost the right to appointed counsel:

> DEFENDANT: Your Honor, you said I'm going to represent myself, right?

> THE COURT: Yes, sir.

> DEFENDANT: Well, could I put in for a file for bond reduction on my case? I mean, I got a bone disease in my leg and the nurse over there in the ward—I've brought this up several times in front of you. I mean, you can put me on house arrest. I live right behind the courthouse. I'll come to court.

We are aware of this Court's recent holding in *State v. Boyd*, —— N.C. App. ——, 682 S.E.2d 463 (2009), *dis. review denied*, N.C. ——, 691 S.E.2d 414 (2010). In *Boyd*, defendant's first appointed counsel was allowed to withdraw when counsel "refus[ed] to file motions for recusal of one superior court judge and subpoena of another." *Id.*

at ——, 682 S.E.2d at 465. Defendant then filed a motion seeking recusal of a trial judge, "which stated in its entirety" that the judge "Has [sic] Fixed One Trial Already, I Have Proof[.]" *Id.* His second appointed trial counsel also asked to be allowed to withdraw, and filed a motion that stated in relevant part:

   4. That during [our] meeting the Defendant was totally uncoopera-
      tive with the undersigned counsel to the extent said counsel was
      unable to prepare any type of defense to the charges.

   5. That during said meeting the Defendant stated to the undersigned
      counsel that he did not wish for said counsel to represent him at
      the trial of these matters and requested of counsel to ask the
      Court to be released in these matters.

   . . . .

   9. . . . Defendant came into the undersigned counsel's office, where-
      upon, said counsel again, attempted to explain to the Defendant
      that his case would be tried, by a jury . . . and in order for said
      counsel to properly represent the Defendant he needed to assist
      counsel in the preparation of his defense. Whereas, the
      Defendant repeatedly told the undersigned counsel that "this
      case was not going to be tried," and that if counsel could not rep-
      resent him in the way he (the Defendant) wanted him to, then he
      (the Defendant) did not wish for this counsel to represent him in
      these matters. The Defendant further stated to the undersigned
      counsel that he (the Defendant) "did not trust" the undersigned
      counsel and did not wish for said counsel to represent him at the
      trial of these matters.

*Id.* On this record, the trial court granted defense counsel's motion to withdraw and "instructed defendant that his trial was to begin at two o'clock that afternoon, and that he would have to represent himself if he could not locate counsel. When defendant did not procure private counsel, the trial court appointed Mr. Barnes as standby counsel and the trial proceeded." *Id.* This Court found no error in the trial court's failure to make a formal inquiry into the defendant's waiver of counsel.

   We note significant differences between *Boyd* and this case:

   Mr. Boyd explicitly threatened that the "case was not going to be
   tried," showing an intention to disrupt the court's schedule.

   The record indicates that, at the time the trial court ruled on
   counsel's motion to withdraw, Mr. Boyd supported the motion.

Mr. Boyd filed apparently frivolous motions accusing the trial court of misconduct.

The trial court engaged in a dialog with Mr. Boyd before ruling.

The opinion in *Boyd* does not indicate an issue regarding the defendant's competence to waive counsel.

This Court chose to employ a "forfeiture" analysis in the Boyd opinion, . . . but the trial court <u>did not</u> use the term.

In contrast, in the instant case (1) there is no evidence that Defendant threatened to disrupt or prevent trial of his case; (2) Defendant was given no opportunity to ratify or reject his counsel's motion to withdraw, or to be heard on the matter; (3) there is evidence raising the issue of Defendant's competence to proceed *pro se*; and, (4) the trial court <u>expressly</u> ruled that Defendant forfeited the right to counsel by his misbehavior. We conclude that *Boyd* does not control the outcome of the instant case.

We conclude that (1) the record contains evidence, not least of which is the trial court's explicit statement, suggesting that Defendant may not have been competent to proceed *pro se*; (2) Ditz had represented Defendant in prior cases and Defendant had not exhibited the confusion nor lack of cooperation as in the present matters; (3) the record does not support a conclusion that Defendant engaged in misconduct sufficiently egregious to warrant forfeiture of his right to counsel; (4) the record evidence of misbehavior is essentially the same as the evidence of Defendant's possible incompetence; and (5) Defendant had no opportunity to be heard, present evidence, or respond to counsel's motion at the hearing wherein the trial court ruled that he had forfeited the right to counsel. We are well aware that the trial court may not have had the benefit of the U.S. Supreme Court's decision of *Indiana v. Edwards*. On the facts of this record, we conclude that the trial court erred by granting defense counsel's motion to withdraw and in ruling that Defendant had forfeited his right to counsel. We reverse and remand for further proceedings consistent with this opinion.

Reversed and Remanded.

Judge HUNTER, JR. concurs.

Judge STEPHENS concurs in separate opinion.

STEPHENS, Judge, concurring.

In light of the decision of the United States Supreme Court in *Indiana v. Edwards*, 554 U.S. 164, 171 L. Ed. 2d 345 (2008), I concur fully in the result reached by the majority in this case. I also concur in most of the reasoning of the majority in reaching this result. I write separately for two reasons: (1) to acknowledge the exceptionally difficult position of our trial judges in assessing and dealing with situations like those created by behavior similar to the behavior of this defendant, and (2) to express my lack of the conviction apparently felt by the majority that this defendant's behavior was motivated by his mental incompetence. While I agree that defendant's misconduct, based on the decisions of this Court and our Supreme Court upon which the majority relies, was not so serious as to lead to forfeiture of his right to counsel, I am not convinced that defendant did not engage in purposeful misbehavior designed to thwart the trial court in the orderly conduct of its business. My view that defendant acted with full awareness of the impropriety of his antics, at least on some occasions, is informed by the following description of his conduct at the 5 February 2008 pretrial hearing, over which Judge Bridges presided:

Defendant repeatedly interrupted Judge Bridges, despite being admonished time and again by Judge Bridges to "let me finish a sentence without interrupting me[.]"

Defendant persisted in arguing with the attorney who was representing him at the time about the way the attorney was handling the case. This attorney no longer wanted to try to help defendant. He explained to Judge Bridges that "I don't know if I want to listen to [defendant] over the course of this trial with the kind of language he's used toward me and the kind of attitude he's displayed toward[] me." He advised that defendant had accused him of "entering into a conspiracy" with defendant's previous attorney and the district attorney to keep defendant in jail. Following an extended argument between defendant and the attorney over when the attorney had visited defendant, the attorney told the court, "See, he contradicts everything I say, Judge."

Defendant made gestures with his hands when the Judge was addressing him on at least two occasions. In addition, he "appeared to make faces" when the Judge was talking to him. This behavior was independently observed and recorded by the court reporter.

I conclude from the transcript of this hearing that, at least on this occasion, defendant was disruptive and inappropriate. I further conclude from this transcript that defendant's misconduct and misbehavior resulted from more than his apparent obsession with his belief that he was wrongly incarcerated and charged only with misdemeanors. I cannot conclude that the evidence establishes only that defendant may be mentally incompetent. I conclude that there is some evidence that he was intentionally engaging in inappropriate behavior designed to disrupt court proceedings. As for defendant's behavior at the other pretrial hearings, which the majority characterizes as defendant's "'apparent obsession' with irrelevancies, rather than abusive or disruptive actions[,]" I note that at the appellate level, we are at a serious disadvantage to completely understand what goes on in a trial courtroom. The cold written record on appeal does not adequately capture the live environment of the courtroom, nor can we on this level, without the aid of experienced and observant court reporters who have the wherewithal to record non-verbal conduct, fully appreciate the demeanor and body language that helps the trial judge decide whether misconduct represents incompetence or shenanigans.

Behavior such as that at issue in this case puts our trial judges in frustrating and tenuous positions when they must try to maintain order in the courtroom and nonetheless assure that the rights of those who appear before them charged with crimes are not abridged. In my view, the able and respected trial judges who tried to deal with this defendant's behavior displayed enormous patience and bent over backward to ensure that defendant understood not only the nature of the charges against him, but also the consequence of his behavior regarding the issue of his representation—an issue which defendant made difficult, at best, for the judges to handle. Indeed, despite defendant's behavior at the 5 February 2008 pretrial hearing and the fact that, by that time, defendant "ha[d] been through three of the best lawyers in Cleveland County[,]" Judge Bridges appointed yet another attorney to assume defendant's representation. Not surprisingly to this writer, that attorney-client relationship did not last either.

Accordingly, while I concur that, under *Edwards*, certain of defendant's behavior raises an issue of defendant's competence to represent himself which must be addressed by the trial court, and while I reluctantly agree that not all of defendant's conduct was "sufficiently egregious to warrant forfeiture of his right to counsel[,]" I sympathize with this State's trial judges who must walk that fine line

between the right and the need to exercise control over courtroom proceedings, and the obligation to protect to the utmost the rights of criminal defendants in their courtrooms, especially the paramount right to competent legal representation.