**IN RE P.D.R.**

[212 N.C. App. 326 (2011)]

IN THE MATTER OF: P.D.R., L.S.R., J.K.R., Minor Children

No. COA10-1519

(Filed 7 June 2011)

**Constitutional Law— right to counsel—failure to make sufficient inquiry for waiver**

The trial court erred by allowing respondent mother to waive counsel and represent herself during a termination of parental rights hearing. The trial court failed to make sufficient inquiry under N.C.G.S. § 15A-1242 regarding whether respondent understood and appreciated the consequences of her decision to waive counsel, and whether she comprehended the nature of the hearing.

Appeal by respondent from order entered 28 September 2010 by Judge Elizabeth T. Trosch in Mecklenburg County District Court. Heard in the Court of Appeals 9 May 2011.

*Kathleen Arundell Widelski for petitioner-appellee.*

*Richard Croutharmel for respondent-appellant.*

*N.C. Administrative Office of the Courts, by Appellate Counsel Pamela Newell, for guardian ad litem.*

GEER, Judge.

Respondent mother appeals from an order terminating her parental rights as to P.D.R. ("Paula"), L.S.R. ("Lindsay"), and J.K.R. ("Jimmy").[1] Respondent mother contends that the trial court erred in allowing her to waive counsel and represent herself during the termination of parental rights ("TPR") hearing. Because the record shows that the trial court failed to make sufficient inquiry regarding whether respondent mother understood and appreciated the consequences of her decision to waive counsel and whether she comprehended the nature of the TPR hearing and its possible outcome, we must vacate and remand.

Facts

The Mecklenburg County Department of Social Services, Youth and Family Services ("YFS") became involved with respondent mother's family in 2003. Since that time, it has received 14 referrals regarding one or more of respondent mother's children. On 6 October

---

1. The pseudonyms of "Paula," "Lindsay," and "Jimmy" are used throughout this opinion to protect the minors' privacy and for ease of reading.

2008, YFS filed a juvenile petition asserting that the children were neglected and dependent juveniles. The petition alleged that on 9 September 2008, YFS received a report that respondent mother and the children were living in respondent mother's vehicle. YFS received another report on 4 October 2008 claiming that respondent mother and the children had been kicked out of a shelter and spent the night in the Carolinas Medical Center waiting area. On the same day that the petition was filed, the trial court entered a non-secure custody order placing the children in the custody of YFS.

YFS filed an amended juvenile petition on 31 October 2008 that added allegations of domestic violence between respondent mother and Paula and Lindsay's father and respondent mother's failure to provide proper care and supervision of the children. The amended petition also alleged that respondent mother had ongoing mental health issues and "seemingly did not understand questions asked of her and did not appear able to respond appropriately."

On 11 February 2009, the trial court ordered respondent mother to undergo a forensic evaluation to evaluate her mental health and competency to proceed in a civil matter. On 17 March 2009, Jennifer Krance of the Behavioral Health Center at Carolinas Medical Center-Randolph ("CMC-Randolph") reported to the court that as of the date of the letter she had not been contacted by respondent mother, and the evaluation had, therefore, been cancelled. On 24 June 2009, the trial court ordered that respondent mother's medical or mental health records from CMC-Randolph be released to the court. On 30 July 2009, the court appointed a guardian ad litem for respondent mother pursuant to Rule 17 of the Rules of Civil Procedure.

On 20 August 2009, the trial court entered an order adjudicating the children neglected and dependent. The court ordered that the plan of care for the children be reunification with respondent mother with a concurrent goal of adoption. The court further ordered that respondent mother comply with her family services case plan and ordered that visitation with respondent mother be suspended until she submitted to a mental health evaluation coordinated by YFS.

A permanency planning hearing was held on 9 September 2009. The trial court found that respondent mother had made no progress toward reunification—she had not participated in her case plan "or anything else to place [her] in position to parent children." The trial court further noted that respondent mother's mental health needs had not been addressed. The court ceased reunification efforts and changed the permanent plan to adoption only.

**IN RE P.D.R.**

[212 N.C. App. 326 (2011)]

On 19 November 2009, YFS filed petitions to terminate respondent mother's parental rights. A guardian ad litem was appointed for respondent mother for the TPR hearing. Before the TPR hearing, another permanency planning hearing was held in March 2010, after which the trial court entered an order again finding that no progress had been made by respondent mother.

The TPR hearing was held on 13 May and 18 June 2010. Respondent mother's appointed counsel, Christian Hoel, was allowed to withdraw and respondent mother proceeded *pro se* at the TPR hearing. On 28 September 2010, the trial court entered an order terminating respondent mother's parental rights. The court's findings of fact detailed the extensive history of domestic violence between respondent mother and Paula and Lindsay's father. According to the trial court, respondent mother had not taken any steps to protect herself from domestic violence, and she minimized or overlooked the fact that domestic violence was "at the heart of this case and the primary reason" that the children were in danger and in need of placement outside of respondent mother's care.

The trial court found that, on various occasions, the children witnessed the domestic violence and that the volatile and violent relationship between respondent mother and Paula and Lindsay's father was what frequently caused respondent mother and the children to be homeless. The trial court also found that respondent mother had been offered but refused services to assist with homelessness, domestic violence, and substance abuse.

The trial court determined that grounds existed to terminate respondent mother's parental rights to Paula, Lindsay, and Jimmy pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) (2009) (neglect), § 7B-1111(a)(2) (willfully leaving the children in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the children), § 7B-1111(a)(3) (willful failure to pay a reasonable portion of the cost of care for the children for a continuous period of six months next preceding the filing of the TPR petition), and § 7B-1111(a)(7) (willful abandonment). The trial court then concluded that termination of respondent mother's parental rights was in the best interests of the children. Respondent mother timely appealed from the TPR order to this Court.

**IN RE P.D.R.**

[212 N.C. App. 326 (2011)]

Discussion

Respondent mother's sole contention on appeal is that the trial court erred in allowing her to waive counsel and represent herself at the TPR hearing. Respondent mother asserts that the record contains evidence that she had unresolved mental health issues and was incompetent to make these decisions. She argues that the trial court did not conduct a sufficient inquiry to determine whether she was competent to waive counsel and proceed *pro se*. This Court has previously looked to criminal cases when addressing a parent's right to counsel in an abuse, neglect, or dependency proceeding, *see In re S.L.L.*, 167 N.C. App. 362, 364, 605 S.E.2d 498, 499 (2004), and we do so here with respect to competency to waive counsel.

The foundational case concerning the right to self-representation is *Faretta v. California*, 422 U.S. 806, 807, 45 L. Ed. 2d 562, 566, 95 S. Ct. 2525, 2527 (1975), in which the United States Supreme Court held that the Sixth and Fourteenth Amendments guarantee that a criminal defendant "has a constitutional right to proceed *without* counsel when he voluntarily and intelligently elects to do so." In *Faretta*, however, the competence of the defendant was not in question because "[t]he record affirmatively show[ed] that [the defendant] was literate, competent, and understanding" in choosing to waive his Sixth Amendment right to counsel. *Id.* at 835, 45 L. Ed. 2d at 582, 95 S. Ct. at 2541. Nevertheless, the Supreme Court also established that, as with any constitutional right, a defendant must knowingly and voluntarily waive its benefits. *Id.*, 45 L. Ed. 2d at 581-82, 95 S. Ct. at 2541.

In *Godinez v. Moran*, 509 U.S. 389, 125 L. Ed. 2d 321, 113 S. Ct. 2680 (1993), the Supreme Court refined its holding in *Faretta* by addressing the right to self-representation for those criminal defendants whose competence is at issue. The defendant in *Godinez* had been found to be competent to stand trial under the standard set out in *Dusky v. United States*, 362 U.S. 402, 402, 4 L. Ed. 2d 824, 825, 80 S. Ct. 788, 789 (1960), which asks whether a defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, and whether he has a rational as well as factual understanding of the proceedings against him. *Godinez*, 509 U.S. at 392, 125 L. Ed. 2d at 328, 113 S. Ct. at 2683. The trial court in *Godinez*, after finding that the defendant was knowingly and intelligently waiving his right to counsel, allowed the defendant's motion to discharge his attorneys and plead guilty to the capital murder charges against him. *Id.* at 392–93, 125 L. Ed. 2d at 328, 113 S. Ct. at 2683. The

defendant later appealed, arguing that the trial court should not have allowed him to represent himself, as he was not competent to do so.

The Supreme Court "reject[ed] the notion that competence to plead guilty or to waive the right to counsel must be measured by a standard that is higher than (or even different from) the *Dusky* standard." *Id.* at 398, 125 L. Ed. 2d at 331, 113 S. Ct. at 2686. Nevertheless, because the trial court must conduct the additional, second step of inquiring whether such waiver is made knowingly and voluntarily, "[i]n this sense there is a 'heightened' standard for pleading guilty and for waiving the right to counsel, but it is not a heightened standard of competence." *Id.* at 400–01, 125 L. Ed. 2d at 333, 113 S. Ct. at 2687.

The Supreme Court observed that the purpose of this second inquiry is "to determine whether the defendant actually *does* understand the significance and consequences of a particular decision and whether the decision is uncoerced." *Id.* at 401 n.12, 125 L. Ed. 2d at 333 n.12, 113 S. Ct. at 2687 n.12; *see also Faretta,* 422 U.S. at 835, 45 L. Ed. 2d at 581–82, 95 S. Ct. at 2541 ("Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." (internal quotation marks omitted)). Accordingly, "the competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right,* not the competence to represent himself," meaning that "a criminal defendant's ability to represent himself has no bearing upon his competence to *choose* self-representation." *Godinez,* 509 U.S. at 399, 400, 125 L. Ed. 2d at 332, 333, 113 S. Ct. at 2687.

The Supreme Court considered a related, but distinct, issue in *Indiana v. Edwards,* 554 U.S. 164, 171 L. Ed. 2d 345, 128 S. Ct. 2379 (2008). In *Edwards,* the Court pointed out that "*Godinez* involved a State that sought to permit a gray-area defendant to represent himself. *Godinez's* constitutional holding is that a State may do so." *Id.* at 173, 171 L. Ed. 2d at 355, 128 S. Ct. at 2385.[2] The *Edwards* Court, however, addressed "whether the Constitution permits a State to limit that defendant's self-representation right by insisting upon representation by counsel at trial—on the ground that the defendant lacks the

---

2. The Court defined the "gray area" as involving a mental condition that falls between "*Dusky's* minimal constitutional requirement that measures a defendant's ability to stand trial and a somewhat higher standard that measures mental fitness for another legal purpose." *Edwards,* 554 U.S. at 172, 171 L. Ed. 2d at 354, 128 S. Ct. at 2385.

mental capacity to conduct his trial defense unless represented." *Id.* at 174, 171 L. Ed. 2d at 355, 128 S. Ct. at 2385-86.

The Court concluded that "the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial under *Dusky* but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." *Id.* at 178, 171 L. Ed. 2d at 357, 128 S. Ct. at 2388. In such circumstances, "judges [may] take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so." *Id.* at 177-78, 171 L. Ed. 2d at 357, 128 S. Ct. at 2387-88. Indeed, the trial judge "will often prove best able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant." *Id.* at 177, 171 L. Ed. 2d at 357, 128 S. Ct. at 2387.

The North Carolina Supreme Court has explained, in *State v. Lane*, 365 N.C. 7, 21-22, 707 S.E.2d 210, 219 (2011), that this line of cases by the United States Supreme Court supports the principle that all criminal defendants, if competent to stand trial, enjoy the constitutional right to self-representation, although that right is not absolute:

> For a defendant whose competence is at issue, he must be found to meet the *Dusky* standard before standing trial. If that defendant, after being found competent, seeks to represent himself, the trial court has two choices: (1) it may grant the motion to proceed *pro se*, allowing the defendant to exercise his constitutional right to self-representation, if and only if the trial court is satisfied that he has knowingly and voluntarily waived his corresponding right to assistance of counsel, pursuant to [*Godinez*]; or (2) it may deny the motion, thereby denying the defendant's constitutional right to self-representation because the defendant falls into the "gray area" and is therefore subject to the "competency limitation" described in *Edwards*, 554 U.S. at 175–76, 128 S.Ct. at 2386, 171 L.Ed.2d at 355–56. The trial court must make findings of fact to support its determination that the defendant is "unable to carry out the basic tasks needed to present his own defense without the help of counsel." *Id.* at 175–76, 128 S.Ct. at 2386, 171 L.Ed.2d at 356 (citations omitted).

*Id.* at 22, 707 S.E.2d at 219.

Applying these cases, we first consider whether the trial court erred in allowing respondent mother's motion to waive counsel. In

**IN RE P.D.R.**

[212 N.C. App. 326 (2011)]

North Carolina, "the waiver of counsel, like the waiver of all constitutional rights, must be knowing and voluntary, and the record must show that the defendant was literate and competent, that he understood the consequences of his waiver, and that, in waiving his right, he was voluntarily exercising his own free will." *State v. Thacker*, 301 N.C. 348, 354, 271 S.E.2d 252, 256 (1980). Accord *State v. Hardy*, 78 N.C. App. 175, 179, 336 S.E.2d 661, 663 (1985) ("[W]aiver of counsel must be voluntarily and knowingly made, and the record must show that the defendant was literate and competent, and that he voluntarily and of his own free will waived this right.").

With respect to the requirement that waiver of counsel be voluntarily and knowingly made, N.C. Gen. Stat. § 15A-1242 (2009) (emphasis added) provides that a defendant "may be permitted at his election to proceed in the trial of his case without the assistance of counsel only after the trial judge makes thorough inquiry and is satisfied that the defendant: (1) [h]as been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel when he is so entitled; (2) [u]nderstands and appreciates the consequences of this decision; and (3) [c]omprehends the nature of the charges and proceedings and the range of permissible punishments." The requirements of N.C. Gen. Stat. § 15A-1242 "are clear and unambiguous. The inquiry is mandatory and must be made in every case in which a defendant elects to proceed without counsel." *State v. Callahan*, 83 N.C. App. 323, 324, 350 S.E.2d 128, 129 (1986), *disc. review denied*, 319 N.C. 225, 353 S.E.2d 409 (1987).

In this case, the trial court was in the midst of discussing Mr. Hoel's motion to withdraw as respondent mother's appointed counsel at the time respondent mother informed the trial court that she "want[ed] to represent [herself]." The Court had already asked whether respondent mother understood that Mr. Hoel had been appointed to represent her; whether she understood that a petition had been filed to terminate her parental rights to Paula, Lindsay, and Jimmy; whether she understood that if she could not afford to hire a lawyer she was entitled to a court-appointed lawyer; and whether she understood that the court had previously found she was entitled to a court-appointed lawyer and that Mr. Hoel had been appointed to represent her. Respondent mother answered "[y]es" to each of these questions.

The trial court's next question was whether respondent mother wanted an attorney to represent her, and respondent mother answered "[n]o," asserting she wanted to represent herself. The trial court then granted Mr. Hoel's motion to withdraw and asked respond-

ent mother to sign a waiver of counsel form: "I'm passing to you a written waiver of counsel. We have already gone over all these issues with you and you have stated that you understand your right to counsel and that it was your desire to represent yourself, so you need to read over that and sign it." When respondent mother refused to sign the form, but still insisted that she wanted to proceed *pro se,* the trial court responded, "Okay."

Although, before granting respondent mother's motion to waive counsel, the trial court inquired as to whether she understood that a petition had been filed to terminate her parental rights to her children, the court did not determine whether respondent mother comprehended the nature of the TPR petition, the proceedings, and what termination of her rights would actually mean. The trial court also did not inquire into whether respondent mother understood and appreciated the consequences of her decision to waive counsel.

This Court has held in criminal cases that "[i]n omitting the second and third inquiries required by N.C. Gen. Stat. § 15A-1242, the trial court failed to determine whether defendant's waiver of his right to counsel was knowing, intelligent and voluntary." *State v. Evans,* 153 N.C. App. 313, 316, 569 S.E.2d 673, 675 (2002) (holding court's inquiry into probationer's expressed desire to proceed *pro se* did not satisfy N.C. Gen. Stat. § 15A-1242 when court merely ascertained that probationer did not have counsel, did not desire counsel and understood that he could have had counsel appointed; court failed to inquire as to whether probationer understood and appreciated consequences of his decision; and court failed to ascertain whether probationer comprehended nature of charges and proceedings and range of permissible punishments that he faced). We hold that the same analysis applies in TPR proceedings.

We further hold that the trial court's later inquiries—made after returning from a lunch recess—were not sufficient to establish that respondent mother had the necessary understanding at the time she waived counsel earlier that morning. After the hearing resumed following the lunch recess, respondent mother's guardian ad litem expressed to the court her concern about moving forward since the trial court had not explained to respondent mother the consequences of proceeding *pro se* and since she did not think respondent mother understood "the process that we're going through today."

The trial court then conducted a lengthier discussion with respondent mother about her decision to proceed *pro se.* At that

point, the court asked respondent mother whether she understood that if YFS was successful in its petition, respondent mother would not be allowed to have a relationship with her children. Instead of directly answering, respondent mother repeatedly insisted that YFS could not prove its allegations. The trial court eventually said, "Oh, my God—[respondent mother], I desperately need you to answer my question," after which respondent mother finally indicated she understood. By this point in the hearing, however, a YFS social worker had already testified for YFS.

Because the trial court did not make the necessary inquiries to determine whether respondent mother made a knowing and voluntary waiver of her right to counsel *before* permitting her to do so and to proceed *pro se*, the trial court erred. *See State v. Carter*, 338 N.C. 569, 581, 451 S.E.2d 157, 163 (1994) ("Before a defendant is allowed to waive in-court representation by counsel, the trial court must insure that constitutional and statutory standards are satisfied." (emphasis added)), *cert. denied*, 515 U.S. 1107, 132 L. Ed. 2d 263, 115 S. Ct. 2256 (1995); *State v. McLeod*, 197 N.C. App. 707, 715, 682 S.E.2d 396, 400 (2009) ("N.C. Gen. Stat. § 15A-1242 makes it clear that the defendant must be advised of the aforementioned inquiries *before* being allowed to proceed *pro se*." (emphasis added)). *See also State v. Moore*, 362 N.C. 319, 326, 661 S.E.2d 722, 726-27 (2008) (holding that later colloquy that took place between defendant and trial court concerning defendant's decision to waive counsel did not cure earlier failure by court to fulfill requirements of N.C. Gen. Stat. § 15A-1242, because it did not take place until first day of defendant's sentencing proceeding, more than five months after defendant was permitted to proceed without assistance of counsel and approximately two months after defendant, proceeding *pro se*, pleaded guilty to murder).

Consequently, the TPR order must be vacated. *See id.*, 661 S.E.2d at 727 (holding new trial was warranted where trial court did not make adequate determination pursuant to N.C. Gen. Stat. § 15A-1242 whether defendant's decision to proceed *pro se* was knowingly, intelligently, and voluntarily made); *In re Watson*, 206 N.C. App. 507, 519, 706 S.E.2d 296, 304 (2011) ("Because the trial court failed to comply with the statutory mandates of N.C. Gen. Stat. § 15A-1242 . . . respondent's waiver of counsel was ineffective and the resulting . . . order must be vacated."). *See also State v. Lamb*, 103 N.C. App. 646, 648, 406 S.E.2d 654, 655 (1991) ("The record must affirmatively show that the inquiry mandated by N.C.G.S. § 15A-1242 was made and that the defendant, *by his answers, was literate, competent*, understood the

consequences of his waiver, and voluntarily exercised his own free will." (emphasis added)).

We further note that the trial court did not ascertain whether respondent mother met the "higher standard" of competence to represent herself at the TPR hearing. *Edwards*, 554 U.S. at 172, 171 L. Ed. 2d at 354, 128 S. Ct. at 2385. *See McKaskle v. Wiggins*, 465 U.S. 168, 174, 79 L. Ed. 2d 122, 133, 104 S. Ct. 944, 951 (cited in *Edwards* for its description of trial tasks as including organization of defense, making motions, arguing points of law, participating in *voir dire*, questioning witnesses, and addressing court and jury). Respondent mother's competence to represent herself was clearly "at issue" in this case. *Lane*, 365 N.C. at 22, 707 S.E.2d at 219.

Significantly, the trial court had appointed a guardian ad litem for respondent mother, which, at a minimum, raised an issue whether she could meet the "somewhat higher [than *Dusky*] standard" for competence to represent herself. *Edwards*, 554 U.S. at 172, 171 L. Ed. 2d at 354, 128 S. Ct. at 2385. In addition, the attorney for YFS objected to the motion of Mr. Hoel, respondent mother's attorney, to withdraw, noting that she believed that "at the last hearing this Court found that [respondent mother] was not competent to waive counsel." At one point, respondent mother even told the court, "I know I may seem crazy, but I don't know what's going on, what they're doing. That's why I'm acting this way, 'cause I don't understand this."

Given these circumstances, the trial court had a duty to inquire into respondent mother's competence not only to waive counsel, but also to represent herself in the TPR proceedings. We believe that the trial court's brief explanation to respondent mother about the proceedings—even if respondent mother claimed to understand—was not sufficient to establish that respondent mother was actually competent to represent herself from the time she waived counsel. *See State v. Wray*, 206 N.C. App. 354, 362, 368, 698 S.E.2d 137, 143, 146 (2010) (reversing and remanding because, *inter alia*, trial court ordered defendant to proceed *pro se* even though record included "significant evidence" from prior hearings that defendant may be in gray area, namely that defendant appeared not to grasp his legal situation and was unable to focus on pertinent legal issues).

The trial court in this case explained after lunch:

> I realize that at a prior hearing several months [sic], I did not find that [respondent mother] was responding to the Court's questions about her ability to understand her right to counsel

and the nature of those proceedings. Her responses indicated to me at that time that she didn't understand the nature of those proceedings. However, there has been nothing about her responses to the Court today or any of the comments that she has made during these proceedings that give me any hesitation in concluding that she understands why we are here, that she understands that this is a termination of parental rights proceeding, that if the department were to prevail that she would lose any parental rights to her three children. She has demonstrated that she understands that she has a right to a lawyer and she has stated over and over again that she does not want a lawyer, any lawyer, to hire a lawyer, a different appointed lawyer, any lawyer, but that she wants to represent herself. And while there was some confusion at the last hearing, there is no—I have not seen any confusion or apparent misunderstanding by [respondent mother] about what we are doing today and the seriousness of this case and her decision to waive her right to counsel.

Even if respondent mother did have the understanding necessary to waive her right to counsel, the trial court never addressed whether respondent mother was actually competent to represent herself without the assistance of counsel. *See Wray*, 206 N.C. App. at 369, 698 S.E.2d at 147 (expressing concern about summary nature of court's ruling that defendant would proceed *pro se* because, *inter alia*, doubts had arisen regarding defendant's competence at previous hearings and defendant had not participated in hearing before ruling was made).

On remand, if respondent mother again indicates that she wishes to waive counsel and proceed *pro se*, the trial court must conduct the N.C. Gen. Stat. § 15A-1242 inquiry, and the record must show that respondent mother is competent to waive counsel, before the court allows respondent mother to waive counsel. "[I]f and only if" the trial court is satisfied that respondent mother has knowingly and voluntarily waived her right to assistance of counsel the court may either (1) allow her to proceed *pro se* because she has the mental fitness to represent herself or (2) deny her right to represent herself if she falls into the gray area and is therefore subject to the *Edwards* competency limitation. *Lane*, 365 N.C. at 22, 707 S.E.2d at 219. If the trial court denies respondent mother's request to represent herself, the court must then "make findings of fact to support its determination that [respondent mother] is 'unable to carry out the basic tasks

needed to present [her] own defense without the help of counsel.' " *Id.* (quoting *Edwards*, 554 U.S. at 175–76, 171 L. Ed. 2d at 356, 128 S. Ct. at 2386).

Vacated and remanded.

Judges McGEE and ROBERT N. HUNTER, JR. concur.