ZACHARY, Judge.
 

 *453
 
 Jonathan Blakeney (defendant) appeals from judgment entered upon a jury verdict finding him guilty of possession of a firearm by a felon and of having attainted the status of an habitual felon. On appeal defendant argues that the trial court erred by requiring defendant to represent himself at trial, on the grounds that defendant neither asked to
 
 *90
 
 proceed
 
 pro se
 
 nor engaged in the type of serious misconduct that would result in an immediate forfeiture of defendant's right to counsel without a prior warning. After careful consideration, we agree.
 

 I. Background
 

 On 17 September 2011, deputies with the Union County Sheriff's Department were dispatched to 3921 Blakeney Road to investigate an assault reported at that location. During the investigation, defendant was arrested and charged with possession of a firearm by a felon. After being informed of his
 
 Miranda
 
 rights, defendant provided law enforcement officers with a statement admitting to possession of a firearm. On 7 November 2011, defendant was indicted for possession of a firearm by a felon. On 30 January 2012, defendant signed a waiver of the right to assigned counsel in three cases, including the charge of possession of a firearm by a felon that is the subject of the present appeal.
 

 On 4 November 2013, more than two years after the incident giving rise to the charge of possession of a firearm by a felon, defendant was indicted for attaining the status of an habitual felon. On 6 November 2014, three years after the incident underlying this appeal, the trial court entered an order striking a previously entered order for arrest and continuing the trial of defendant's case until 15 December 2014. Documentation is not included in the record, but the parties agree that defendant had failed to appear for trial in early November, 2014.
 

 The charges against defendant came on for trial on 15 December 2014. Prior to trial, defendant's counsel, Mr. Vernon Cloud, moved to withdraw as defendant's attorney. Mr. Cloud stated that defendant had spoken rudely to him and that defendant no longer wanted him to represent defendant at the pending trial. Defendant agreed that he did not want Mr. Cloud to represent him on the charges of possession of a firearm by a felon and having the status of an habitual felon, but stated that he wished to retain Mr. Cloud as his counsel on other charges then pending against defendant. Defendant did not indicate in any way that he wished to represent himself, but told the trial court that he intended to hire a different attorney, specifically saying, "I've talked to Miles Helms. He's willing to take my case." In response, the trial court told defendant
 
 *454
 
 that he had a right to fire his lawyer, but that "the trial is still going." The trial court and defendant then had the following discussion:
 

 THE COURT: ... Mr. Blakeney, you need to understand something.... You're not first; you're not even second right now.... I'm going to do a motion here in a little bit with Mr. Principe that may or may not dispose of a case.... We may start picking a jury and that defendant may decide to plead guilty. Okay? And you have moved from third to first. Okay?
 

 DEFENDANT: Okay.
 

 THE COURT: And we might not know that until later this afternoon; maybe tomorrow morning. Okay? But at that time, when you become first on the list and I call your name, okay, you need to be either in this audience, okay, or unless you have been released and given a number where you can be here in an hour or so where we know that.
 

 DEFENDANT: Yes, sir.
 

 THE COURT: Typically we'll give you that, okay? Get you here in an hour and ready to go. And if you're not, I'm going to issue an order for your arrest.
 

 DEFENDANT: If I could, Your Honor?
 

 THE COURT: Uh huh.
 

 DEFENDANT: Ask for a continuance. This would be my first continuance that I have asked for in my favor.
 

 THE COURT: Right.
 

 DEFENDANT: Of the cases that has been continued has been from the State.
 

 THE COURT: Mr. Blakeney, this is a 2011 case.
 

 DEFENDANT: Yes, sir.
 

 THE COURT: It is 2014. All right. You're third on the list. May or may not get to it, but I'm not going to continue it. It's an old case that needs to be tried.
 

 DEFENDANT: Okay. And I would have been ready to try this case had not been if we could have sat down me and my lawyer sat down with my witnesses and ... talked about this, this trial.
 

 *91
 

 *455
 
 THE COURT: You still-you're still not number one yet. You still may not-you still may not be tried this week.... But you need to be ready to go.... [Mr. Cloud,] you are released in case number 11 CRS 55059; the charge of possession of a firearm by a felon, and that is the only case Mr. Blakeney in which you are firing Mr. Cloud. Is that right?
 

 DEFENDANT: Yes, sir.
 

 ....
 

 MS. CHUNN: There is a habitual felon as well, Your Honor.
 

 THE COURT: All right. So if-and I use the word if this case is called for trial, okay, you're going to try Mr. Blakeney on the possession of a firearm by a felon in 11 CRS 55059; and if he is convicted of that ... you're going to seek habitual felon status against him as well from that same jury.
 

 MS. CHUNN: That's correct, Your Honor.
 

 ...
 

 THE COURT: Okay. All right. You understand that, Mr. Blakeney?
 

 DEFENDANT: Yes, sir.
 

 THE COURT: Okay. We won't talk about being a habitual felon until and unless you are convicted, if you are convicted of the underlying charge.
 

 ...
 

 THE COURT: Mr. Blakeney, I'm going to give you this one courtesy, okay? ... I'm going to have you give to Deputy LaRue here your cell phone number or a number you can be reached. You're going to be on a one hour standby.
 

 DEFENDANT: Okay.
 

 THE COURT: All right. So when I give you a one hour standby, if we call that number, it is disconnected, nobody knows you at that number or whatever, when I call that number, the clock starts and one hour later, if you're not here, I'm going to have the bailiffs call and fail you and I'm going to issue a bond. I'm here the next six months starting in January. I'll know where you're at when we call
 
 *456
 
 your case for trial next time, okay, because it will be in the Union County Jail. All right?
 

 DEFENDANT: Yes, sir. Yes, sir.
 

 THE COURT: Okay. All right. So that gives you time to get out, go see Mr. Helms, go do whatever you need to do.... You're third on the list, and like I said, sometimes third we never reach it. Sometimes third reaches tomorrow morning.
 

 DEFENDANT: Okay.
 

 THE COURT: Okay? All right.
 

 DEFENDANT: Thank you, sir.
 

 Two days later, on 17 December 2014, defendant's case was called for trial, and defendant and the trial court had the following dialog:
 

 THE COURT: Come on down, sir. Mr. Blakeney, when we spoke on Monday, I told you that you were third on the list and we have reached that level, all right.
 

 DEFENDANT: Okay.
 

 THE COURT: And the State is calling for trial the State of North Carolina versus you, Jonathan Brandon Blakeney. It's case number 11 CRS 55059. It's a charge of possession of a firearm by a felon. All right?
 

 DEFENDANT: Okay.
 

 THE COURT: And as I explained to you the other day, that's a Class G felony, but the State is also, if you are convicted of that felony, I would-it will never come in front of the jury, no one will ever mention to the jury the fact that the State is also seeking to have you found to be a habitual felon. Okay? We don't talk about being a habitual felon until and unless the jury returns a verdict of guilty of the felony of possession of a firearm. All right?
 

 DEFENDANT: Okay.
 

 THE COURT: If you're found not guilty of possession of a firearm by a felon, the habitual felon case goes away. If you are found guilty of possessing a firearm by a felon, then we have a second part of the trial with the same jury
 
 *457
 
 to determine whether or not you are a habitual felon, and the State would have to prove to the jury beyond a reasonable doubt that you have three prior felony convictions....
 

 DEFENDANT: Okay.
 

 *92
 
 THE COURT: Okay? So that's where we're at. You had mentioned to me Monday that you were attempting to hire Mr. Helms to represent you in this charge. I had released Mr. Cloud from this one case. You had retained him in that one case, in a bunch of cases, but had released him only in this one case. Had you hired Mr. Helms?
 

 DEFENDANT: No, sir, he wouldn't-he wouldn't take my case. He told me that it would be a waste of time because he didn't have time to even discuss my case with me.
 

 THE COURT: Yes, sir. All right. You prepared to go forward?
 

 DEFENDANT: Yes, sir, I guess-I mean-
 

 THE COURT: Yes, sir.
 

 DEFENDANT:-my hands are tied. I mean I guess so.
 

 THE COURT: You're going to-you're going to act as your own attorney? Let me tell you how-not-I don't know how much experience you've had in court. We'll call the jury in; I'll explain to the jury what the charges are. I'm going to introduce everybody, introduce you to the jury, tell them what the charge is, introduce Ms. Chunn as the DA for the State. You have entered a plea of not guilty to this charge. Is that correct?
 

 Thereafter, the trial court explains to defendant the process of jury selection, until defendant interrupts:
 

 DEFENDANT: So this is still set, for the record, for the-... that I'm being tried without a lawyer?
 

 THE COURT: Yes, sir, that's all on the record.
 

 DEFENDANT: Okay.
 

 THE COURT: Okay? We did that on Monday. That's-every-Ms. Trout has been here every day, okay?
 

 DEFENDANT: Okay.
 

 *458
 
 THE COURT: Everything we do in this court is on the record, all right?
 

 DEFENDANT: Okay.
 

 THE COURT: And it was on the record when you released Mr. Cloud on Monday, all right?
 

 DEFENDANT: Yes, sir.
 

 ...
 

 THE COURT: And it was on the record that you are representing yourself in this matter; that I denied a continuance because you have waived-previously waived your right to court appointed counsel and you had hired your own attorney. Okay?
 

 DEFENDANT: Okay.
 

 The record to that point includes
 
 no mention
 
 of the possibility that defendant would represent himself. Thereafter, the trial proceeded and the State offered the testimony of several witnesses. During the presentation of the State's case, defendant was uniformly polite and deferential to the trial court and to those in the courtroom. Defendant did not object to any of the prosecutor's questions or to the introduction of any evidence, including his inculpatory statement. Defendant presented several witnesses and also testified in a narrative form about the events of 17 September 2011; however, defendant never denied being in possession of a firearm, and defendant's evidence addressed issues that were legally irrelevant to the charge of possession of a firearm by a felon. Following the presentation of evidence and instructions from the trial court, the jury returned a verdict finding defendant guilty of possession of a firearm by a felon.
 

 During the habitual felon stage of the trial, the jury sent the trial court a note asking whether defendant had refused representation by an attorney. The trial court explained to the jurors that this was not a proper matter for their consideration. Out of the presence of the jury, the trial court then expressed its opinion, for the first time during these proceedings, that defendant's request to hire a different attorney had been motivated by defendant's wish to postpone the trial. After the jury returned a verdict finding that defendant had attained the status of an habitual felon, the trial court conducted a sentencing hearing. The trial court found that defendant was a Level IV offender and was to be sentenced as an habitual felon. The court found two mitigating factors:
 

 *459
 
 that defendant supported his family, and that defendant had voluntarily appeared in court throughout the proceedings. The
 
 *93
 
 trial court imposed a sentence in the mitigated range of seventy-two to ninety-six months. Defendant appealed to this Court.
 

 II. Standard of Review
 

 Defendant's sole argument on appeal is that the trial court violated defendant's Sixth Amendment right to counsel by requiring defendant to represent himself. " 'It is well settled that
 
 de novo
 
 review is ordinarily appropriate in cases where constitutional rights are implicated.' "
 
 State v. Wray,
 

 206 N.C.App. 354
 
 , 356,
 
 698 S.E.2d 137
 
 , 140 (2010) (quoting
 
 Piedmont Triad Reg'l Water Auth. v. Sumner Hills Inc.,
 

 353 N.C. 343
 
 , 348,
 
 543 S.E.2d 844
 
 , 848 (2001) ),
 
 disc. review denied,
 

 365 N.C. 88
 
 ,
 
 706 S.E.2d 476
 
 (2011).
 

 III. Sixth Amendment Right to Counsel
 

 Defendant argues that the trial court violated his Sixth Amendment right to the assistance of counsel by requiring defendant to proceed
 
 pro se,
 
 despite the fact that defendant did not ask to represent himself, was not warned that he might have to represent himself, and had not engaged in egregious conduct that would justify an immediate forfeiture of his right to counsel without a warning. We agree.
 

 "A criminal defendant's right to representation by counsel in serious criminal matters is guaranteed by the Sixth Amendment to the United States Constitution and Article I, §§ 19, 23 of the North Carolina Constitution."
 
 State v. Hyatt,
 

 132 N.C.App. 697
 
 , 702,
 
 513 S.E.2d 90
 
 , 94 (1999) (citing
 
 Gideon v. Wainwright,
 

 372 U.S. 335
 
 ,
 
 83 S.Ct. 792
 
 ,
 
 9 L.Ed.2d 799
 
 (1963) ). Our appellate courts have recognized two circumstances, however, under which a defendant may no longer have the right to be represented by counsel.
 

 First, a defendant may voluntarily waive the right to be represented by counsel and instead proceed
 
 pro se.
 
 "[W]aiver of the right to counsel and election to proceed
 
 pro se
 
 must be expressed 'clearly and unequivocally.' "
 
 State v. Thomas,
 

 331 N.C. 671
 
 , 673-74,
 
 417 S.E.2d 473
 
 , 475 (1992) (quoting
 
 State v. McGuire,
 

 297 N.C. 69
 
 , 81,
 
 254 S.E.2d 165
 
 , 173 (1979) ). "Once a defendant clearly and unequivocally states that he wants to proceed
 
 pro se,
 
 the trial court ... must determine whether the defendant knowingly, intelligently, and voluntarily waives the right to in-court representation by counsel."
 
 Thomas,
 

 331 N.C. at 674
 
 ,
 
 417 S.E.2d at 476
 
 (citations omitted). A trial court's inquiry will satisfy this constitutional requirement if conducted pursuant to N.C.G.S. § 15A-1242.
 

 Id.
 

 (citation omitted). This statute provides:
 

 *460
 
 A defendant may be permitted at his election to proceed in the trial of his case without the assistance of counsel only after the trial judge makes thorough inquiry and is satisfied that the defendant:
 

 (1) Has been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel when he is so entitled;
 

 (2) Understands and appreciates the consequences of this decision; and
 

 (3) Comprehends the nature of the charges and proceedings and the range of permissible punishments.
 

 In this case, neither defendant nor the State asserts that defendant ever asked to represent himself at trial, and our own review of the transcript fails to reveal any evidence that defendant indicated, must less "clearly and unequivocally" requested, that he be permitted to proceed
 
 pro se.
 
 "The record clearly indicates that when defendant signed the waiver of his right to assigned counsel he did so with the expectation of being able to privately retain counsel. Before [the trial court] the defendant stated that he wanted to ... employ his own lawyer. There is no evidence that defendant ever intended to proceed to trial without the assistance of some counsel."
 
 State v. McCrowre,
 

 312 N.C. 478
 
 , 480,
 
 322 S.E.2d 775
 
 , 776-77 (1984). We conclude that the present case is not governed by appellate cases addressing a trial court's responsibility to ensure that a defendant who
 
 wishes
 
 to represent himself is "knowingly, intelligently, and voluntarily" waiving his right to counsel.
 

 The second circumstance under which a criminal defendant may no longer have the right to be represented by counsel occurs when a defendant engages in such serious misconduct that he forfeits his constitutional right to counsel. Although the right
 
 *94
 
 to counsel "is guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article I of the North Carolina Constitution,"
 
 State v. Montgomery,
 

 138 N.C.App. 521
 
 , 524,
 
 530 S.E.2d 66
 
 , 68 (2000), in some situations a defendant may lose this right:
 

 Although the loss of counsel due to defendant's own actions is often referred to as a waiver of the right to counsel, a better term to describe this situation is forfeiture. "Unlike waiver, which requires a knowing and intentional relinquishment of a known right, forfeiture results in the loss of a right regardless of the defendant's knowledge
 
 *461
 
 thereof and irrespective of whether the defendant intended to relinquish the right." ... [A] defendant who is abusive toward his attorney may forfeit his right to counsel.
 

 Montgomery,
 

 138 N.C.App. at 524-25
 
 ,
 
 530 S.E.2d at 69
 
 (quoting
 
 United States v. Goldberg,
 

 67 F.3d 1092
 
 , 1100 (3d.Cir.Pa.1995) (other quotation omitted)).
 

 In this case, the State argues that defendant forfeited his right to counsel, relying primarily upon generalized language excerpted from
 
 Montgomery
 
 stating that a forfeiture of counsel "results when the state's interest in maintaining an orderly trial schedule and the defendant's negligence, indifference, or possibly purposeful delaying tactic, combine[ ] to justify a forfeiture of defendant's right to counsel."
 
 Montgomery
 
 at 524-25,
 
 530 S.E.2d at 69
 
 (internal quotation omitted). The State also cites
 
 State v. Quick,
 

 179 N.C.App. 647
 
 , 649-50,
 
 634 S.E.2d 915
 
 , 917 (2006), in which this Court cited
 
 Montgomery
 
 for the proposition that "[a]ny willful actions on the part of the defendant that result in the absence of defense counsel constitutes a forfeiture of the right to counsel."
 
 Montgomery
 
 did not, however, include such a broad holding or suggest that "any willful actions" resulting in the absence of defense counsel are sufficient to constitute a forfeiture. Instead, as this Court has observed, forfeiture of the right to counsel has usually been restricted to situations involving egregious conduct by a defendant:
 

 Although the United States Supreme Court has never directly addressed forfeiture of the right to counsel, the Court's other holdings demonstrate reluctance to uphold forfeiture of a criminal defendant's U.S. Constitutional rights, except in egregious circumstances.... Additionally, the federal and state courts that have addressed forfeiture have restricted it to instances of severe misconduct.
 

 Wray,
 

 206 N.C.App. at 358-59
 
 ,
 
 698 S.E.2d at 140-41
 
 (2010) (citing
 
 Illinois v. Allen,
 

 397 U.S. 337
 
 ,
 
 90 S.Ct. 1057
 
 ,
 
 25 L.Ed.2d 353
 
 (1970) (other citations omitted)).
 

 There is no bright-line definition of the degree of misconduct that would justify forfeiture of a defendant's right to counsel. However, our review of the published opinions of our appellate courts indicates that, as discussed in
 
 Wray,
 
 forfeiture has generally been limited to situations involving "severe misconduct" and specifically to cases in which the defendant engaged in one or more of the following: (1) flagrant or extended delaying tactics, such as repeatedly firing a series of attorneys; (2) offensive or abusive behavior, such as threatening counsel, cursing,
 
 *462
 
 spitting, or disrupting proceedings in court; or (3) refusal to acknowledge the trial court's jurisdiction or participate in the judicial process, or insistence on nonsensical and nonexistent legal "rights." The following is a list of published cases from North Carolina in which a defendant was held to have forfeited the right to counsel, with a brief indication of the type of behavior in which the defendant engaged:
 

 1.
 
 State v. Montgomery,
 

 138 N.C.App. 521
 
 ,
 
 530 S.E.2d 66
 
 (2000) : the defendant fired several lawyers, was disruptive and used profanity in court, threw water on his attorney while in court, and was repeatedly found in criminal contempt.
 

 2.
 
 State v. Quick,
 

 179 N.C.App. 647
 
 ,
 
 634 S.E.2d 915
 
 (2006) : the defendant in a probation revocation case waived court-appointed counsel in order to hire private counsel, but during an eight month period did not contact any attorney, instead waiting until the day before trial.
 

 3.
 
 State v. Rogers,
 

 194 N.C.App. 131
 
 ,
 
 669 S.E.2d 77
 
 (2008),
 
 disc. review denied,
 

 363 N.C. 136
 
 ,
 
 676 S.E.2d 305
 
 (2009): over the course of two years, the defendant fired
 
 *95
 
 several attorneys, made unreasonable accusations about court personnel, reported one of his attorneys to the State Bar, accused another of racism, and was warned by the court about his behavior.
 

 4.
 
 State v. Boyd,
 

 200 N.C.App. 97
 
 ,
 
 682 S.E.2d 463
 
 (2009),
 
 disc. review denied,
 

 691 S.E.2d 414
 
 (2010) : during a period of more than a year, the defendant refused to cooperate with two different attorneys, repeatedly told one attorney that the case "was not going to be tried," was "totally uncooperative" with counsel, demanded that each attorney withdraw from representation, and "obstructed and delayed" the trial proceedings.
 

 5.
 
 State v. Leyshon,
 

 211 N.C.App. 511
 
 ,
 
 710 S.E.2d 282
 
 ,
 
 appeal dismissed,
 

 365 N.C. 338
 
 ,
 
 717 S.E.2d 566
 
 (2011) : for more than a year after defendant was arraigned, he refused to sign a waiver of counsel or state whether or not he wanted counsel, instead arguing that the court did not have jurisdiction and making an array of legally nonsensical assertions about the court's authority.
 

 *463
 
 6.
 
 State v. Cureton,
 

 223 N.C.App. 274
 
 ,
 
 734 S.E.2d 572
 
 (2012) : the defendant feigned mental illness, discharged three different attorneys, "consistently shouted at his attorneys, insulted and abused his attorneys, and at one point spat on his attorney and threatened to kill him."
 

 7.
 
 State v. Mee,
 

 233 N.C.App. 542
 
 ,
 
 756 S.E.2d 103
 
 (2014) : the defendant appeared before four different judges over a period of fourteen months, during which time he hired and then fired counsel twice, was represented by an assistant public defender, refused to state his wishes with respect to counsel, advanced unsupported legal theories concerning jurisdiction, and refused to participate in the trial.
 

 8.
 
 State v. Joiner,
 
 --- N.C.App. ----,
 
 767 S.E.2d 557
 
 (2014) : the defendant gave "evasive and often bizarre" answers to the court's questions, shouted and cursed at the trial court, smeared feces on the holding cell wall, had to be gagged during trial, threatened courtroom personnel with bodily harm, and refused to answer simple questions.
 

 9.
 
 State v. Brown,
 
 --- N.C.App. ----,
 
 768 S.E.2d 896
 
 (2015) : like the defendants in
 
 Mee
 
 and
 
 Leyshon,
 
 this defendant offered only repetitive legal gibberish in response to simple questions about representation, and refused to recognize the court's jurisdiction.
 

 In stark contrast to the defendants discussed above, in this case:
 

 1. Defendant was uniformly polite and cooperative. In fact, the trial court found as a mitigating factor that the defendant returned to court as directed during the habitual felon phase, even after he had been found guilty of the underlying offense.
 

 2. Defendant did not deny the trial court's jurisdiction, disrupt court proceedings, or behave offensively.
 

 3. Defendant did not hire and fire multiple attorneys, or repeatedly delay the trial. Although the case was three years old at the time of trial, the delay from September 2011 until August 2014 resulted from the State's failure to prosecute, rather than actions by defendant.
 

 We conclude that defendant's request for a continuance in order to hire a different attorney, even if motivated by a wish to postpone his
 
 *464
 
 trial, was nowhere close to the "serious misconduct" that has previously been held to constitute forfeiture of counsel. In reaching this decision, we find it very significant that defendant was not warned or informed that if he chose to discharge his counsel but was unable to hire another attorney, he would then be forced to proceed
 
 pro se.
 
 Nor was defendant warned of the consequences of such a decision. We need not decide, and express no opinion on, the issue of whether certain conduct by a defendant might justify an immediate forfeiture of counsel without any preliminary warning to the defendant. On the facts of this case, however, we hold that defendant was entitled, at a minimum, to be informed by the trial court that defendant's failure to hire new counsel might result in defendant's being required to represent himself, and to be advised of the consequences of self-representation.
 
 *96
 
 "[W]ith the exception of decisions of the United States Supreme Court, federal appellate decisions are not binding upon either the appellate or trial courts of this State."
 
 State v. Adams,
 

 132 N.C.App. 819
 
 , 820,
 
 513 S.E.2d 588
 
 , 589 (citing
 
 State v. McDowell,
 

 310 N.C. 61
 
 , 74,
 
 310 S.E.2d 301
 
 , 310 (1984) (holding that appellate courts should treat "decisions of the United States Supreme Court as binding and accord[ ] to decisions of lower federal courts such persuasiveness as these decisions might reasonably command")),
 
 disc. review denied,
 

 350 N.C. 836
 
 ,
 
 538 S.E.2d 570
 
 (1999). In this regard, we find persuasive the analysis of this subject in
 
 United States v. Goldberg,
 

 67 F.3d 1092
 
 , 1100 (3d.Cir.Pa.1995), a leading case on the issue of forfeiture of counsel which has been cited in appellate decisions more than three hundred times, including in five North Carolina cases.
 
 Goldberg
 
 describes three categories of situations involving waiver or forfeiture of representation by counsel. First, the
 
 Goldberg
 
 Court noted that if "a defendant requests permission to proceed
 
 pro se, Faretta
 
 requires trial courts to ensure that the defendant is aware of the risks of proceeding
 
 pro se
 
 as a constitutional prerequisite to a valid waiver of the right to counsel."
 
 Goldberg,
 

 67 F.3d at 1099
 
 . The Court next considered forfeiture, which "results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right."
 
 Goldberg
 
 at 1100. The third category posited in
 
 Goldberg
 
 is similar to the present circumstances:
 

 Finally, there is a hybrid situation ("waiver by conduct") that combines elements of waiver and forfeiture. Once a defendant has been warned that he will lose his attorney if he engages in dilatory tactics, any misconduct thereafter may be treated as an implied request to proceed
 
 pro se
 
 and,
 
 *465
 
 thus, as a waiver of the right to counsel.... Recognizing the difference between "forfeiture" and "waiver by conduct" is important. First, because of the drastic nature of the sanction, forfeiture would appear to require extremely dilatory conduct. On the other hand, a "waiver by conduct" could be based on conduct less severe than that sufficient to warrant a forfeiture. This makes sense since a "waiver by conduct"
 
 requires that a defendant be warned about the consequences of his conduct, including the risks of proceeding pro se.
 
 A defendant who engages in dilatory conduct having been warned that such conduct will be treated as a request to proceed
 
 pro se
 
 cannot complain that a court is "forfeiting" his right to counsel.
 

 Goldberg
 
 at 1100-1101 (emphasis added) (citations omitted). We find
 
 Goldberg's
 
 analysis useful in determining that, on the facts of this case, the defendant cannot be said to have forfeited his right to counsel in the absence of any warning by the trial court both that he might be required to represent himself and of the consequences of this decision.
 

 In reaching this conclusion, we have considered the State's arguments for a contrary result, some of which are not consistent with the trial transcript. On appeal, the State contends that at the outset of trial the trial court "found that Defendant had only fired Mr. Cloud so as to attempt to delay the trial," citing page twenty-seven of the transcript. In fact, at the start of the trial, the trial court did
 
 not
 
 express any opinion on defendant's motivation for seeking to continue the case and hire a different attorney. During the habitual felon phase, after defendant had been found guilty of the charge, the jury was sufficiently concerned about defendant's self-representation to send the trial court a note asking whether defendant had refused counsel. It was only at that point that the trial court expressed its opinion that defendant had hoped to delay the trial by replacing one attorney with another. The State also alleges several times in its appellate brief that the trial court made "specific findings about Defendant's forfeiture of his right to counsel," maintaining that "the trial court specifically found that Defendant's conduct in firing his lawyer to delay the trial forfeited his right to private counsel, thus requiring Defendant to proceed
 
 pro se
 
 " and urging that we "should affirm the trial court's finding that Defendant discharged his private counsel on the day of the trial to obstruct and delay his trial and thereby forfeited his right to counsel[.]" However, as
 
 *97
 
 defendant states in his reply brief, the "trial court never found that Mr. Blakeney forfeited his right to counsel[.] ... Indeed, the word "forfeit" does not appear in the transcript of the trial proceedings."
 
 *466
 
 There is no indication in the record that the trial court ruled that defendant forfeited the right to counsel by engaging in serious misconduct. Moreover, defendant was not warned that he might have to represent himself, and the trial court did not conduct the inquiry mandated by N.C. Gen.Stat. § 15A-1242, in order to ensure that defendant understood the implications of appearing
 
 pro se.
 
 In
 
 State v. Bullock,
 

 316 N.C. 180
 
 ,
 
 340 S.E.2d 106
 
 (1986), our Supreme Court addressed a factual situation similar both to the present case and to the "waiver by conduct" scenario discussed in
 
 Goldberg.
 
 In
 
 Bullock,
 
 the defendants' attorneys moved to withdraw shortly before trial, due to irreconcilable differences with the defendant. A few days later, defendant was in court and engaged in the following dialog with the trial court:
 

 Court: Mr. Bullock, I understand from Mr. Brown you wish to agree that Mr. C.C. Malone and Mr. Artis Plummer will no longer be your lawyers, is that correct?
 

 Defendant Bullock: That is so.
 

 Court: Now, they are employed by you, is that correct?
 

 Defendant Bullock: Yes, sir.
 

 Court: You understand that the Court is not going to appoint a lawyer for you?
 

 Defendant Bullock: Yes, sir.
 

 Court: Mr. Mason, when do you expect this case to be on the calendar?
 

 Ms. Scouten: It is already set next Monday.
 

 Court: I am not going to continue the case.
 

 Defendant Bullock: Yes, sir.
 

 Court: It will be for trial next Monday morning. You have a lawyer in here to go or be here yourself ready to go without a lawyer. Is that the way you understand it?
 

 Defendant Bullock: Yes, sir.
 

 Court: Going to be no continuance.
 

 Defendant Bullock: Yes, sir.
 

 Bullock,
 

 316 N.C. at 182-83
 
 ,
 
 340 S.E.2d at 107
 
 . We note that in
 
 Bullock,
 
 unlike the present case, the defendant was at least warned that he might
 
 *467
 
 be required to proceed
 
 pro se.
 
 When the case was called for trial, the following dialog occurred:
 

 Court: Are you ready to proceed, Mr. Bullock?
 

 Mr. Bullock: I haven't been-I haven't been able to find counsel to represent me, Your Honor.
 

 Court: Well, you had a lawyer.
 

 Mr. Bullock: After-after-on September the 4th to September the 10th, the counsels that I went to, they said they wouldn't have time enough for preparation.
 

 Court: Well, you had a lawyer, and it was your wish to get rid of him. And I let you get rid of him, but I told you at the time, if I'm not badly mistaken, that we would be trying your case on this date. Do you remember that?
 

 Mr. Bullock: Yes, sir.
 

 Court: You were fully aware of that when you consider-consented to the withdrawal of your former lawyer.
 

 Mr. Bullock: (Nods affirmatively.)
 

 Court: All right. The case will be for trial.
 

 Bullock
 
 at 184,
 
 340 S.E.2d at 108
 
 . On appeal, our Supreme Court "agree[d] with the defendant that he is entitled to a new trial because the trial judge did not comply with N.C.G.S. § 15A-1242 before allowing the defendant to be tried without counsel":
 

 The defendant consented to the withdrawal of his retained counsel because of irreconcilable differences but stated that he would employ other counsel. On the day of the trial, he said that he had been unable to get any attorney to take his case because of the inadequate preparation time. The trial court reminded the defendant that he had warned him he would try the case as scheduled. The defendant acquiesced to trial without counsel because he had no other choice. Events here do not show a voluntary exercise of the defendant's free will to proceed
 
 pro se.
 

 Bullock,
 

 316 N.C. at 185
 
 ,
 
 340 S.E.2d at
 
 108 (citing
 
 Faretta v. California,
 

 422 U.S. 806
 
 ,
 
 95 S.Ct. 2525
 
 ,
 
 45 L.Ed.2d 562
 
 (1975) ). The
 
 *98
 
 Court in
 
 Bullock
 
 also cited
 
 State v. McCrowre,
 

 312 N.C. 478
 
 ,
 
 322 S.E.2d 775
 
 (1984), noting that in that case the court "held that the defendant was entitled to a
 
 *468
 
 new trial because
 
 the record did not show that the defendant intended to go to trial without the assistance of counsel
 
 and because the inquiry required by N.C.G.S. § 15A-1242 was not conducted."
 

 Id.
 

 (emphasis added).
 
 Bullock
 
 appears to be functionally indistinguishable from the present case as regards the trial court's obligation to conduct the inquiry required by N.C. Gen.Stat. § 15A-1242.
 

 For the reasons discussed above, we conclude that defendant neither voluntarily waived the right to be represented by counsel, nor engaged in such serious misconduct as to warrant forfeiture of the right to counsel without any warning by the trial court. As a result, the trial court was required to inform defendant that if he discharged his attorney but was unable to hire new counsel, he would then be required to represent himself. The trial court was further obligated to conduct the inquiry mandated by N.C. Gen.Stat. § 15A-1242, in order to ensure that defendant understood the consequences of self-representation. The trial court's failure to conduct either of these inquiries or discussions with defendant resulted in a violation of defendant's right under the Sixth Amendment to be represented by counsel, and requires a new trial.
 

 REVERSED AND REMANDED.
 

 Judges BRYANT concurs in the result.
 

 Judge CALABRIA concurs.