HUNTER, JR., Robert N., Judge.
 

 *867
 
 Fredrick John Schumann ("Defendant") appeals from judgments entered upon jury verdicts finding him guilty of four counts of trafficking "14 grams or more, but less than 28 grams of opium or heroin" and four counts of trafficking "28 grams or more of opium or heroin." On appeal, Defendant argues the trial court erred by requiring Defendant to represent himself at trial, on the grounds Defendant neither asked to proceed
 
 pro se
 
 nor engaged in the type of misconduct which would result in a forfeiture of Defendant's right to counsel. We disagree.
 

 I. Factual and Procedural Background
 

 On 7 August 2013, a grand jury indicted Defendant for the following offenses: (1) four counts of trafficking more than 28 grams of opium, namely Hydrocodone on 25 February 2013; (2) four counts of trafficking more than 28 grams of opium, namely Hydrocodone, on 22 March 2013; and (3) one count of selling marijuana on 6 March 2013. On 6 April 2016, Defendant was re-indicted on the eight trafficking hydrocodone cases as follows: (1) four counts of trafficking "14 grams or more, but less than 28 grams of an opium derivative, namely Hydrocodone" on 25 February 2013, and (2) four counts of trafficking "28 grams or more of an opium derivative, namely Hydrocodone."
 

 On 12 September 2013, Defendant appeared before Judge Douglas B. Sasser ("Judge Sasser") in Columbus County Superior Court, and signed a waiver of counsel form declaring:
 

 I have been fully informed of the charges against me, the nature of and the statutory punishment for each such charge, and the nature of the proceedings against me; that I have been advised of my right to have counsel assigned to assist me and my right to have the assistance of counsel in defending against these charges or in handling these proceedings, and that I fully understand and appreciate the consequences of my decision to waive the right to assigned counsel and the right to assistance of counsel.
 

 Defendant "freely, voluntarily and knowingly" waived this right.
 

 On 12 December 2013, Defendant appeared before Judge D. Jack Hooks, Jr., ("Judge Hooks") and signed a second Waiver of Counsel Form. Here, Defendant repeated the declarations he made in his initial September waiver. On that same day, attorney Walter D. Palmer
 
 *868
 
 ("Palmer") filed a Notice of Limited Appearance of Counsel limiting Palmer's representation of Defendant to pre-trial case management.
 

 On 16 September 2015, Defendant again appeared before Judge Sasser. Palmer told the trial court, "I previously filed a limited appearance basically through this point. I
 
 *382
 
 believe the State's got their labs back and would be ready to set a trial date." Judge Sasser and Defendant then conducted the following exchange:
 

 THE COURT: You understand that if you want a court-appointed attorney, now is the time to ask for it, otherwise you'll be responsible if this matter does not resolve itself for case management. It's your responsibility to hire an attorney or represent yourself at trial. Now, that should have been the conversation that took place with you back several months ago, if not more than a year ago. Mr. Palmer indicates that matters have not been resolved and it's now ready to go on to trial.
 

 Mr. Schumann, I would certainly recommend you get yourself ready for trial. You have to understand that the Court can't help you. You have to know about how to pick a jury, and how many peremptory challenges, what's required to exercise one, what motions you can make and when to make those motions, who gets opening statement, what is an opening statement, what can I say during a closing argument. A lot of things go into a trial. It's not simple and there's rules that have to be followed, and the rules apply to you the same as they apply to an attorney. Are you going to hire an attorney for trial?
 

 THE DEFENDANT: Yes, sir.
 

 The Assistant District Attorney ("ADA") then advised the trial court the case could come up for trial in the middle of the following year. Judge Sasser then advised Defendant:
 

 I'll give you two months to get your attorney hired .... Mr. Schumann, at 9:00 a.m., November 5 be back in this courtroom ... and hopefully you got your lawyer with you and then we'll talk to your lawyer about a trial date for your case, give him enough time to get prepared. You need to go ahead and get a lawyer. Don't come back in November saying, I don't have a lawyer yet. You need a lawyer in place. All right? ... It's to confirm who trial counsel will be for Mr. Schumann.
 

 *869
 
 On 5 November 2015, Defendant again appeared before Judge Sasser. The following exchange occurred:
 

 THE COURT: [A]ll the way back in September 2013, you indicated you were going to hire an attorney. So we're now over two years later. The State now has lab results and is ready to set this matter for trial, and the attorneys indicated you first made a limited appearance back in December 2013.
 

 You're still not fully retained in this matter, and I want to make sure you understand we're getting ready to set a trial date, and it's your responsibility to either have an attorney-you said you could afford to hire one-you've had two years, and in that two years, you've never come back in and said, You know, I lost my job, I just can't do it, I can't afford one, I need court-appointed counsel. Waited two years, and now it's ready for trial.
 

 It's your responsibility to have an attorney, or you understand that you'll be trying the matter yourself? And I would strongly recommend that you not represent yourself in a superior court trial with all that's involved, in jury selection, motions, presenting the evidence, knowing what evidence may be admissible and not admissible. There's a reason we have folks go to law school for years and take exams to be licensed to do this.
 

 So I strongly encourage you now is the time to get a lawyer retained, because if not, then I'll see you back in court-and you understand for trafficking, I would anticipate with all these charges if convicted by a jury, probably most likely spend the rest of your life in prison.
 

 Do you understand that?
 

 THE DEFENDANT: Yes, sir.
 

 On 10 December 2015, Defendant again appeared before Judge Sasser. Defendant stated, "I had hired Mr. Cartrette and now I'm back to the same boat again. Mr. Palmer didn't want to take the case." Therefore, Defendant told the court, "I need a little bit of time." The trial court responded, "Come back on January 7
 
 th
 
 . Report back to me and tell me who your lawyer is then, but you need to go ahead-because that trial's coming up soon[.]" Defendant assured the trial
 
 *383
 
 court he understood, and then thanked Judge Sasser.
 
 *870
 
 On 7 January 2016, Defendant was before Judge Sasser again. An attorney named Mr. Byrd was in court that day, and he explained:
 

 I'm not in a position to make an appearance for Mr. Schumann at this time. He indicated to me that he had spoken with Mr. Cartrette and thought Mr. Cartrette was going to be able to represent him; now understand he can't. I would be asking to come back in February to address that. I haven't had time to look over the case ...
 

 The trial court then stated, "I will leave it on the unrepresented calendar, set it for February, and hopefully you will be in a position to make an appearance at that time."
 

 Defendant returned to court on 15 February 2016. The trial court told Defendant, "I talked with Mr. Byrd-in case he is talking with you-but he has not given-he is not ready to make an appearance in your case yet." The trial court then stated, "You've got to go ahead and make arrangements to get Mr. Byrd or someone to come back here on March 10
 
 th
 
 , and we'll be ready to set the trial date on March 10
 
 th
 
 ." Defendant replied, "All right."
 

 The next time Defendant returned to court was 28 March 2016. The presiding judge was Ronald L. Stephens. The State informed the trial court:
 

 Mr. Schumann did have counsel. Mr. Palmer represented him through our case management calendar. Once that did not come to a non-trial resolution, because Mr. Palmer was on a limited basis, he withdrew leaving Mr. Schumann to find another attorney.
 

 From September up until today's date, I think he has done that, and he can address that more with you. But I've had two attorneys come to me within the last month to two-the last one coming just last week-trying to resolve the matter.
 

 ....
 

 [T]he State is ready to proceed to trial. I do worry about proceeding with him unrepresented with no counsel just because of the ramifications of his-of his age and how much time he is looking at, it could amount to a life sentence for him.
 

 *871
 
 The State then told the trial court, "I have communicated with three attorneys." The trial court addressed Defendant:
 

 [H]ow do you intend to proceed as far as-as far as your case now? It's on the trial calendar, and that's unfortunate for you on this-we-we surely have a process in which it moves along. And I used to say the train is on the track, and frankly-frankly, it's roaring right along. And I'm not sure who is driving it, because you don't have a lawyer evidently. And the constitution surely allows you to drive your own train; represent yourself. But these are serious charges. And if you are convicted of them, they carry mandatory sentences in which-anyway, you can get a bunch of time.
 

 Defendant responded by explaining his dealings with various attorneys over the past few months. The trial court then told Defendant, "You can choose your own lawyer, if you would like, if you can afford one. If you can't afford one, the Court will consider appointing you a lawyer; or you can represent yourself. But that's what the constitution gives you the right to do." The trial court went on to explain, "I just need to know today when you have your jury trial whether or not you're going to have a lawyer, you're going to be your own lawyer, or whether or not-or how you are going to proceed."
 

 The following colloquy occurred:
 

 THE DEFENDANT: My feelings that I run-that I need-I don't know if it's possible, but I need a-a-person in the back to-point me in the directions through this-this-this proceedings at this point. Not speaking for me, but just describe-cross the t's and dotting all the i's. And I-I-that kind of a counsel, I-I was looking to see if I could find-come up with that kind of counsel.
 

 THE COURT: Well, I mean-
 

 THE DEFENDANT: But it looks like it's going to a jury trial.
 

 THE COURT:-the constitution provides you the right to either represent yourself or select somebody to represent you; and that person, with your assistance, will
 
 *384
 
 speak for you. So you don't really get standby counsel. You don't get to represent yourself and then get somebody to sit behind you and then-
 
 *872
 
 THE DEFENDANT: I'll represent myself, Your Honor.
 

 The attorneys that I've talked to didn't-they just don't have the time to prepare for this. They've got too many things on their desk that are-
 

 THE COURT: Well, is it-is it that, or they just haven't been paid?
 

 THE DEFENDANT: No. It isn't the paying situation.
 

 The trial court then continued the matter off the trial calendar and reset it for the next administrative session of court so the senior resident judge could address Defendant's counsel situation.
 

 On 7 April 2016, Defendant was again before Judge Sasser. The State requested setting the matter on the July trial calendar and asked the court to address Defendant's counsel issue. The trial court stated:
 

 I'm going to do a standby counsel at this point. I've talked to Mr. Schumann before, and he's indicated he could hire counsel and waived his right to Court-appointed counsel; he wanted to hire an attorney. I clearly told him, and he understood, that if he did not hire counsel, then he would be on his own at trial.
 

 I'm going to give standby counsel. There's a totally different obligation of standby counsel as to retained or Court-appointed counsel. But for the purposes of protecting his rights, his constitutional rights to an attorney, I'll do standby counsel.
 

 The trial court appointed attorney Jim Caviness ("Caviness") to serve as Defendant's standby attorney. The trial court advised Defendant he needed to have an attorney to represent him rather than representing himself, and reminded him he had been advised months ago of the serious nature of the charges. Caviness asked to discuss the situation with Defendant to determine if Defendant could afford an attorney. The trial court stated Defendant should have asked for a court-appointed attorney months earlier, and the case had already been continued numerous times. Additionally, the case had already once been on the trial calendar and subsequently removed due to Defendant's issue with finding counsel. The trial court stated it was not going to start the "process" again because Defendant told the court months earlier he could hire an attorney. The trial court concluded by determining, "He's going to get standby counsel or he's going to hire an attorney, as he told me he could do months ago."
 

 *873
 
 Defendant again explained his dealings with various attorneys to the court. At one point, the trial court interrupted Defendant and stated, "Listen very carefully. You waived originally. You said you were going to hire an attorney back in 2013. It's now 2016." The trial court also reminded Defendant, "I specifically told you that if you wanted Court-appointed counsel-if you could not afford an attorney, you could apply for Court-appointed counsel. And you told me no, you didn't want it." Defendant responded, "This is not a dollar issue, Your Honor. It's a situation where he had asked for more time to prepare[.]" The trial court then stated, "good news is I'm giving you until July. Be back on June 13
 
 th
 
 . Get him paid, and get him prepared."
 

 On 5 May 2016, Defendant appeared before Judge Sasser requesting discovery. Standby counsel was also present. The State told the court it provided discovery to two attorneys, including one who returned the discovery to the District Attorney's office. The State continued:
 

 Mr. Schumann himself came to our office, maybe a couple months ago; we provided discovery for him again, to him personally. He has come back to the office as recently as two weeks ago asking for another copy of discovery.
 

 At some point, the State has complied by giving discovery. I know he has to have discovery to prepare for trial, but I just wanted to put this on the record that the State continues to comply by giving him multiple copies of discovery, and he continues to request more copies of discovery of the same thing.
 

 *385
 
 The trial court ordered Defendant was entitled to a copy of his discovery, but if he needed an extra copy, he would have to pay for it.
 

 On 13 June 2016, Defendant again appeared before Judge Sasser. The trial court asked Defendant if he hired an attorney, and Defendant responded he had not. The trial court then asked Defendant if he was still trying to hire counsel or was he representing himself with standby counsel. Defendant responded he was representing himself. Defendant then complained he was unable to read several of the CDs that came with discovery. The trial court ordered standby counsel to assist Defendant and "make sure that he has the ability to open his discovery on those discs."
 

 On 14 July 2016, Defendant again appeared before Judge Sasser. Standby counsel informed the court Defendant missed his appointment with counsel which had been set for the purpose of assisting Defendant in opening the discovery discs. Standby counsel also reported while he
 
 *874
 
 informed Defendant he could not negotiate a plea, Defendant asked standby counsel to tell the State he was willing to plead if he did not receive time or probation. The State declined Defendant's plea offer. The trial court then stated:
 

 Mr. Schumann, your trial date is approaching. I have actually got a murder trial that I anticipate going first, but sometimes things fall off, so your case could potentially be reached as soon as basically about a week and a half from now.
 

 I've had you in court numerous times. We've tried to give you a chance to hire an attorney. And I've appointed standby counsel for you. I tried to work out that if you have any kind of discovery issues, you can even work with standby counsel to make sure that they have the ability to open any documents, software, so you can view those. And time continues to pass, months go by, and it seems really that no progress is being made in regards to the case.
 

 ....
 

 And I've done everything I possibly can to try to accommodate you, to give you the opportunity to get an attorney, to get assistance. And what I'm seeing is you're not taking advantage of the opportunities the Court is trying to afford you. And later on down the road, the Court will have no problem saying put 12 people in the box, make a decision, and you understand, you might be spending the rest of your life in prison.
 

 ....
 

 And I feel confident you understand what's happening, you understand the process, and I'm afraid you're playing a game that is going to hurt you down the road.
 

 Defendant responded by again complaining about discovery. The trial court informed Defendant his discovery issue "would be a potential trial issue" and reminded Defendant his court date was set for 25 July 2016.
 

 Defendant's case came on for trial on 30 August 2016. Defendant appeared
 
 pro se
 
 . Caviness appeared as Defendant's standby counsel. Prior to bringing the jury in, the trial court advised Defendant his mandatory sentence on just one count would be 225 to 279 months' imprisonment. The trial court then stated:
 

 *875
 
 The State had discussed with you a possible plea which would get it outside the mandatory active range. And basically, if you want to try to talk with the State again and see if there's anything that you can try to work out, that they'll agree to at this point modifying and, you know, reducing and take a lesser-included offense and try to work something out, you can try to work a plea out. But we need to do something quick, because I've got the jurors waiting.
 

 Defendant replied "I understand why lawyers are to be hired. Okay? I really do. ... As far as having a lawyer goes-which you told me to go and do-I have tried my best." Defendant then complained his plea with the State involved spending three years in prison, and he insisted he would only accept a plea with no prison because "I can't do active time." The trial court reminded Defendant going to trial meant "all or nothing," and a conviction would probably mean a life sentence. Defendant replied, "I understand that, Your Honor."
 

 *386
 
 At trial, the State's evidence tended to show Kevin Norris ("Norris"), a deputy with the Columbus County Sheriff's Department, worked with an undercover confidential informant named Jerry Adams ("Adams"). Adams agreed to be an informant in exchange for dismissal of the charges against him. Adams arranged to purchase hydrocodone from Defendant. Norris placed a recording device on Adams. From a position of about 200 to 300 yards away, Norris observed the meeting between Adams and Defendant. After the transaction, Adams turned the drugs over to Norris. Over the next few months, Adams had several more transactions of this nature with Defendant and Norris.
 

 The jury found Defendant guilty of the four counts of trafficking 14 grams or more but less than 28 grams of opium or heroin, and four counts of trafficking 28 grams or more of opium or heroin. The jury failed to reach a verdict on the selling marijuana charge, and so the trial court declared a mistrial. The State subsequently dismissed the charge. The trial court sentenced Defendant to 90 to 120 months' imprisonment for the 25 February 2013 offenses, and a concurrent sentence of 225 to 282 months' imprisonment for the 22 March 2013 offenses. Defendant timely appealed.
 

 II. Standard of Review
 

 Constitutional issues are subject to
 
 de novo
 
 review.
 
 Piedmont Triad Reg'l Water Auth. v. Sumner Hills, Inc.
 
 ,
 
 353 N.C. 343
 
 , 348,
 
 543 S.E.2d 844
 
 , 848 (2001). "Under a
 
 de novo
 
 review, the court considers the matter anew and freely substitutes its own judgment for that of the lower
 
 *876
 
 tribunal."
 
 State v. Williams
 
 ,
 
 362 N.C. 628
 
 , 632-33,
 
 669 S.E.2d 290
 
 , 294 (2008) (internal quotation marks and citation omitted).
 

 III. Analysis
 

 "The right to counsel is one of the most closely guarded of all trial rights."
 
 State v. Graham
 
 ,
 
 76 N.C. App. 470
 
 , 473,
 
 333 S.E.2d 547
 
 , 549 (1985). "A criminal defendant's right to representation by counsel in serious criminal matters is guaranteed by the Sixth Amendment to the United States Constitution and Article I, §§ 19, 23 of the North Carolina Constitution."
 
 State v. Hyatt
 
 ,
 
 132 N.C. App. 697
 
 , 702,
 
 513 S.E.2d 90
 
 , 94 (1999). Defendants are constitutionally "entitled to the assistance of counsel at every critical stage of the criminal process."
 
 State v. Taylor
 
 ,
 
 354 N.C. 28
 
 , 35,
 
 550 S.E.2d 141
 
 , 147 (2001).
 

 A defendant may voluntarily waive the right to counsel and instead proceed
 
 pro se.
 
 "[W]aiver of the right to counsel and election to proceed
 
 pro se
 
 must be expressed 'clearly and unequivocally.' "
 
 State v. Thomas
 
 ,
 
 331 N.C. 671
 
 , 673-74,
 
 417 S.E.2d 473
 
 , 475 (1992) (quoting
 
 State v. McGuire
 
 ,
 
 297 N.C. 69
 
 , 81,
 
 254 S.E.2d 165
 
 , 173 (1979) ). "Once a defendant clearly and unequivocally states that he wants to proceed
 
 pro se
 
 , the trial court ... must determine whether the defendant knowingly, intelligently, and voluntarily waives the right to in-court representation by counsel."
 
 Thomas
 
 at 674,
 
 417 S.E.2d at 476
 
 (citations omitted). A trial court's inquiry will satisfy this requirement if conducted pursuant to N.C. Gen. Stat. § 15A-1242.
 
 Id.
 
 at 674,
 
 417 S.E.2d at 476
 
 (citations omitted). Under N.C. Gen. Stat. § 15A-1242 (2017):
 

 A defendant may be permitted at his election to proceed in the trial of his case without the assistance of counsel only after the trial judge makes thorough inquiry and is satisfied that the defendant:
 

 (1) Has been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel when he is so entitled;
 

 (2) Understands and appreciates the consequences of this decision; and
 

 (3) Comprehends the nature of the charges and proceedings and the range of permissible punishments.
 

 Defendant first contends he did not unequivocally elect to proceed
 
 pro se.
 
 Defendant argues the trial court did not adhere to the requirements of N.C. Gen. Stat. § 15A-1242 and therefore his constitutional rights to counsel were violated. We disagree.
 

 *877
 
 In 2013, Defendant signed two waivers of assigned counsel which explicitly acknowledged he had been informed of the nature of
 
 *387
 
 the charges and the statutory punishment for them.
 

 In his brief, Defendant asserts it was "after he had difficulties finding an attorney who could represent him at trial did [he] give any indication he would represent himself" in March 2016. However, in both September and November 2015, Defendant stated he would be representing himself if he did not have an attorney at the time of trial. On 28 March 2016, Defendant stated "I'll represent myself" after he explained the attorneys he talked to did not have time to prepare. At that point, Judge Stephens asked Defendant if the attorneys declined to represent him because they had not been paid. Defendant denied money was an issue. Due to this exchange, Judge Stephens continued Defendant's case so the senior resident judge could address the issue of counsel.
 

 In November 2015, Judge Sasser reminded Defendant that over the course of two years Defendant had never stated he could not afford an attorney or needed a court-appointed attorney. At the same time, Judge Sasser advised Defendant if he did not have an attorney by the trial date, he would have to represent himself. Judge Sasser also advised Defendant representing himself would involve jury selection, motions, presenting the evidence, knowing what evidence is admissible and "there's a reason we have folks go to law school for years and take exams to be licensed to do this." Finally, Judge Sasser told Defendant he needed to get an attorney because if he were convicted of the trafficking charges, he would most likely spend the rest of his life in prison.
 

 The trial court inquired into Defendant's understanding of the seriousness of the charges on at least two occasions. In both instances, Defendant acknowledged his understanding. The trial court asked Defendant if he was unable to afford an attorney or would like to request a court appointed attorney on at least two occasions. In response, Defendant explicitly stated he could afford to hire an attorney and intended to do so.
 

 During his many appearances before the court, Defendant made numerous excuses for not hiring an attorney, including claiming the attorneys he talked to were unavailable due to insufficient time to prepare or had been arrested. The trial court gave Defendant additional time to work out attorney representation ten times over the course of ten months. The trial court also twice gave Defendant at least three months' notice of a trial date.
 

 *878
 
 Defendant also stated he would represent himself because the attorneys he had contacted needed more time to prepare and the court date set by the judge did not give him enough time. In response, the trial court gave Defendant four additional months to engage an attorney. Even after the trial court gave Defendant four additional months, Defendant came before the court and made the same excuses for why he had not hired an attorney.
 

 The trial court repeatedly counseled Defendant on the seriousness of the charges. Both Judge Sasser and Judge Stephens had lengthy exchanges with Defendant on the need for counsel. Judge Sasser ultimately appointed standby counsel for Defendant in light of the seriousness of the charges.
 

 On 14 July 2016, Judge Sasser told Defendant if he was convicted, he would likely spend the rest of his life in prison. Judge Sasser also told Defendant he still had time to make a plea with the State. Judge Sasser said, "I feel confident you understand what's happening, you understand the process, and I'm afraid you're playing a game that is going to hurt you down the road."
 

 On 30 August 2016, before bringing the jury into the courtroom, Judge Sasser advised Defendant he was looking at a mandatory minimum sentence of 225 to 279 months' imprisonment. Defendant replied, "I understand why lawyers are to be hired. Okay? I really do. ... As far as having a lawyer goes-which you told me to go and do-I have tried my best." Judge Sasser gave Defendant another chance to work out a plea deal and then stated, "I have told you repeatedly this was serious business." Defendant complained the plea deal involved spending three years in prison and insisted he would only accept a plea deal with no prison because "I can't do active time." Judge Sasser reminded Defendant going to
 
 *388
 
 trial meant all or nothing, and a conviction probably meant a life sentence. Defendant stated, "I understand that, Your Honor."
 

 The trial court gave Defendant years to find an attorney. At each stage the trial court advised and counseled Defendant about his right to an attorney including his right to appointed counsel. The trial court also repeatedly counseled Defendant on the complexity of handling his own jury trial and the fact the judge would not be able to help him. Finally, the trial court repeatedly addressed the seriousness of the charges and advised Defendant a conviction likely meant a life sentence. Despite this, Defendant proceeded to represent himself at trial.
 

 Defendant's assertion the trial court failed to take any measures to ascertain whether Defendant understood the various difficulties
 
 *879
 
 associated with representing himself is without merit. Our review of the record indicates the trial court advised Defendant he would have to adhere to rules of court and evidence. The trial court also informed Defendant the court would not assist Defendant, and Defendant was facing serious charges which could result in a life sentence upon conviction. The record also indicates Defendant repeatedly expressed his understanding of the trial court's instruction on this issue. We conclude Defendant waived his right to court-appointed counsel.
 

 The State also contends even if Defendant could fairly argue the trial court failed to advise Defendant of his rights in waiving counsel and the hazards of proceeding
 
 pro se
 
 , he forfeited his right to counsel by his conduct. We agree.
 

 Forfeiture of counsel is separate from waiver because waiver requires a "knowing and intentional relinquishment of a known right" whereas forfeiture "results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right."
 
 State v. Montgomery
 
 ,
 
 138 N.C. App. 521
 
 , 524,
 
 530 S.E.2d 66
 
 , 69 (2000). "Any willful actions on the part of the defendant that result in the absence of defense counsel constitutes a forfeiture of the right to counsel."
 
 State v. Leyshon
 
 ,
 
 211 N.C. App. 511
 
 , 518,
 
 710 S.E.2d 282
 
 , 288 (2011) (quoting
 
 State v. Quick
 
 ,
 
 179 N.C. App. 647
 
 , 649-50,
 
 634 S.E.2d 915
 
 , 917 (2006) ). Forfeiture typically occurs when a defendant obstructs or delays the proceedings by refusing to cooperate with counsel or refusing to participate in the proceedings.
 
 See
 

 State v. Blakeney
 
 ,
 
 245 N.C. App. 452
 
 , 460-62,
 
 782 S.E.2d 88
 
 , 94-95 (2016) (citations omitted).
 

 In
 
 Blakeney,
 
 this Court outlined three types of behavior which may result in forfeiture:
 

 (1) flagrant or extended delaying tactics, such as repeatedly firing a series of attorneys; (2) offensive or abusive behavior, such as threatening counsel, cursing, spitting, or disrupting proceedings in court; or (3) refusal to acknowledge the trial court's jurisdiction or participate in the judicial process, or insistence on nonsensical and nonexistent legal rights.
 

 Id
 
 . at 461-62,
 
 782 S.E.2d at 94
 
 .
 

 Here, Defendant's conduct falls within the first category of forfeiture described in
 
 Blakeney
 
 since Defendant employed "extended delaying tactics."
 
 Id
 
 . at 461-62,
 
 782 S.E.2d at 94
 
 . First, Defendant waived his right to
 
 *880
 
 assigned counsel in 2013. The trial court repeatedly advised Defendant on the seriousness of the charges and informed Defendant a conviction could lead to a life sentence due to Defendant's age. Time after time, Defendant stated he intended to hire his own attorney. Defendant made close to monthly appearances in court over a 10-month period, and consistently told the court he wished to hire his own attorney. During these appearances, the trial court asked Defendant at least twice if he needed appointed counsel. Defendant answered by claiming to have sufficient funds to hire an attorney. Additionally, the trial court continued Defendant's case several times to give Defendant's attorney time to prepare since Defendant claimed the attorneys he met with did not have adequate time to prepare for trial.
 

 Based on the foregoing, we determine Defendant's conduct "result[ed] in the absence of defense counsel [which] constitutes a forfeiture of the right to counsel."
 

 *389
 

 State v. Quick
 
 ,
 
 179 N.C. App. 647
 
 , 649-50,
 
 634 S.E.2d 915
 
 , 917 (2006). Under our
 
 de
 

 novo
 
 review, we conclude Defendant's failure to hire his own counsel resulted in repeated delays in the case proceeding to trial, and therefore Defendant forfeited his right to court-appointed counsel. We further conclude the trial court followed the parameters set forth in N.C. Gen. Stat. § 15A-1242 in determining Defendant unequivocally elected to proceed
 
 pro se.
 

 NO ERROR.
 

 Judges INMAN and BERGER concur.