IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-662

Filed: 21 July 2020

New Hanover County, No. 17 CRS 58605

STATE OF NORTH CAROLINA

v.

JOSHUA LEE PATTERSON

Appeal by defendant from judgments entered 9 January 2019 by Judge James S. Carmical in New Hanover County Superior Court. Heard in the Court of Appeals 29 April 2020.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Kristin J. Uicker, for the State.*
>
> *Law Office of Richard J. Costanza, P.A., by Richard J. Costanza, for defendant.*

DIETZ, Judge.

Defendant Joshua Lee Patterson appeals his convictions for multiple charges related to a burglary at the home of the New Hanover County District Attorney.

Patterson was a problematic client for his court-appointed counsel. At least two of his court-appointed attorneys withdrew because he was uncooperative—for example, he insisted that his counsel assert frivolous claims, he raised baseless accusations of bias by his counsel, and he made unfounded accusations that the State monitored his confidential attorney-client communications.

Ultimately, the trial court determined that Patterson forfeited his right to counsel. Patterson challenges that forfeiture determination on appeal.

While the appeal was pending, our Supreme Court decided its first case concerning forfeiture of counsel. *State v. Simpkins*, 373 N.C. 530, 534–39, 838 S.E.2d 439, 445–48 (2020). Under *Simpkins*, the record on appeal does not support forfeiture. But the parties acknowledge that there was information provided to the trial court in off-the-record proceedings not documented in the record on appeal. Based on these proceedings and multiple references in the trial court's order to Patterson's "abuse" of his counsel, there may have been evidence before the trial court to support its forfeiture determination under the Supreme Court's standard announced in *Simpkins*. We therefore vacate the trial court's judgments and remand for a new forfeiture hearing as explained in more detail below.

**Facts and Procedural History**

In September 2017, someone broke into the home of the New Hanover County District Attorney and stole various items, including a Visa gift card and several electronic devices. Police later arrested Joshua Lee Patterson, who admitted to breaking into the home, taking the missing items, and using the Visa gift card.

Following Patterson's arrest, the trial court appointed Andrew Nettleman as counsel to represent him. In February 2018, Nettleman moved to withdraw, with a notation that "Conflict has arisen" without providing further details. The trial court

allowed the motion, finding that "good cause has been shown so as to necessitate counsel's withdrawal." The court then appointed another attorney, Bill Peregroy, to represent Patterson.

In April 2018, Peregroy also moved to withdraw. In his motion, Peregroy described in detail the issues he faced while representing Patterson. Patterson failed to respond to Peregroy's request for him to review discovery materials. Patterson also believed his initial meeting with Peregroy was recorded by the State and insisted that it was a "judicial discrepancy" warranting the dismissal of his case. Peregroy met with Patterson to attempt to resolve the issue, but Patterson was "insistent upon the Court hearing (a nonexistent) recording in support of his motion for dismissal" of the charges and insisted Peregroy was lying to him about the existence of a recording. Patterson vacillated between telling Peregroy that he didn't want to speak to him and stating that he did not want Peregroy to withdraw. Peregroy asserted that he was "unable to collect definitive instruction from the defendant with respect to his wishes but has informed him that a motion to dismiss cannot be brought with a good faith basis in law or fact."

Peregroy attempted to contact Patterson's mother to discuss concerns about Patterson's possible mental health or substance abuse issues, but Patterson's mother eventually declined to cooperate because Patterson told her not to speak to his

counsel. In May 2018, the trial court allowed Peregroy's motion to withdraw and appointed a third attorney, Margaret Jennings, to represent Patterson.

On 8 November 2018, Jennings, too, filed a motion to withdraw and requested appointment of substitute counsel. The trial court held a hearing on Jennings's motion.

Following an in-chambers discussion between the court and counsel that was not recorded in the transcript or narrated in the record, Jennings told the court that Patterson requested that she withdraw. Then, after Jennings already had filed the motion to withdraw and sent it to Patterson, Patterson told Jennings that he wanted her to remain on the case. Jennings explained that there have "been multiple times that he has requested me to withdraw since being appointed in June. This kind of happens every few weeks. And it has gotten to the point that I feel like I no longer can be effective in representing him if I'm continually trying to defend myself." Jennings told the court she and Patterson "have had discussions about that yesterday and those were civil discussions, which some of our other discussions I would describe would not be civil discussions regarding this matter."

Jennings then asked the court to appoint an out-of-county attorney to represent Patterson. The State had secured an out-of-county prosecutor because the victim in the case was the county's District Attorney and Jennings believed this might address Patterson's concerns about bias by his court-appointed counsel. Although

Jennings assured the court that she doesn't "have a type of relationship" with the District Attorney that would affect her ability to represent Patterson, Jennings explained, "I do believe it absolutely has affected [Patterson's] perception of what I'm doing in the case because [the District Attorney] is the victim." Finally, Jennings informed the court that she had difficulties because Patterson insisted she propose a plea deal that Jennings believed was unrealistic. The State offered "60 to 84 months" and, in response, Patterson insisted that Jennings propose "a counteroffer of time served."

The State responded that Patterson's "problems" all stem "from the defendant's attitude" or "eccentricities" and that "[t]here comes a time to start having a conversation about forfeiture of his right to counsel by his own actions of abuse." The State asserted that "[a]ll three of these lawyers would characterize or have characterized their communications with [Patterson] as abusive, argumentative, angry, and conspiratorial."

The trial court then addressed Patterson directly. Patterson explained that he initially asked Jennings to withdraw, but "[s]ince then I've called [and] asked her not to." Patterson went on to briefly describe his issues with Peregroy.

After hearing from Patterson, the trial court announced that it would grant Jennings's motion to withdraw and find that Patterson had forfeited his right to counsel:

> Ms. Jennings indicates that apparently there's an argumentative and perhaps abusive relationship. The Court has also heard, and it has been indicated in this hearing as well as discussions between the Court and counsel that the prior attorneys' relationship with Mr. Patterson also was abusive and argumentative. Apparently, Mr. Patterson dislikes the plea offer which has been tendered by a nondistrict, noncounty ADA in this matter. . . . [T]he Court finds, notes, and concludes that all of the difficulties in this matter at this point have to do with Mr. Patterson's attitude toward counsel, that he continually demands more than the defense counsel has reasonable possibility of controlling . . . . [T]he Court sees that Mr. – foresees that Mr. Patterson's attitude is not going to change should we appoint new counsel, whether in or out of county, and that Mr. Patterson has engaged in conduct and has an attitude such that he has forfeited his right to the assistance of counsel, including court-appointed because of his own incessant demands and badgering.

The court allowed Jennings's motion to withdraw and "ordered that Mr. Patterson has forfeited his right to counsel, including court-appointed, because of his own attitude and actions and treatment of counsel." The court instructed that Patterson "should be required and allowed to proceed on a pro se basis." The court appointed Jennings as standby counsel.

After addressing other procedural matters, the trial court asked Patterson, "Do you have any further business for this court this day?" Patterson responded, "I would like to ask you to reconsider my represent – my public defense." The court responded, "And the record will reflect that I have and my decision remains the same." Patterson responded "Okay" and "That I'm fine with." The trial court later entered a written

order memorializing its forfeiture determination which made repeated references to Patterson's "abusive attitude" or "abuse of counsel."

On 7 January 2019, Patterson represented himself at trial and presented no evidence in his defense. The jury convicted Patterson of all charges. After arresting judgment on a conviction for possession of stolen goods, the trial court sentenced Patterson to 84 to 113 months in prison for burglary and a consolidated sentence of 10 to 21 months for larceny and obtaining property by false pretenses.

After sentencing, the trial court noted that Patterson has "rights postjudgment so [he] might want to discuss that with [standby counsel]." Patterson did not give oral notice of appeal and did not file a timely written notice of appeal. He later petitioned for a writ of certiorari to permit this Court to review his arguments.

**Analysis**

**I.      Petition for a writ of certiorari**

We first address our jurisdiction to hear this appeal. Although Patterson did not properly notice an appeal, he has included a document with his petition, addressed to the Clerk of Superior Court, titled "New Hanover County Detention Facility Inmate Request Form." On it, Patterson wrote his case number and "I am appealing my sentencing my name is Joshua Lee Patterson. Contact me as soon as possible." The form was dated "1-18-18" by Patterson and filed stamped by the clerk on 25 February 2019.

"This Court has discretion to allow a petition for a writ of certiorari 'to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action.' N.C. R. App. P. 21(a)." *State v. Bishop*, 255 N.C. App. 767, 769, 805 S.E.2d 367, 369 (2017). "[A] petition for the writ must show merit or that error was probably committed below." *Id.*

Patterson's inmate request form demonstrates that he intended to exercise his right to appeal but lost that right due to failure to take timely action. Moreover, as discussed below, he has demonstrated that he has a potentially meritorious argument. In our discretion, we allow Patterson's petition for a writ of certiorari to reach to the merits of his appeal. N.C. R. App. P. 21(a)(1).

## II.    Forfeiture of right to counsel

Patterson argues that the trial court erred by determining that he forfeited his constitutional right to counsel. While Patterson's appeal was pending, our Supreme Court issued its opinion in *State v. Simpkins*, 373 N.C. 530, 838 S.E.2d 439 (2020). Under *Simpkins*, the record on appeal does not support the trial court's determination that Patterson forfeited his right to counsel.

This Court reviews a trial court determination concerning forfeiture of counsel de novo. *Id.* at 533, 838 S.E.2d at 444. "Under a de novo review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008).

"A criminal defendant's right to representation by counsel in serious criminal matters is guaranteed by the Sixth Amendment to the United States Constitution and Article I, §§ 19, 23 of the North Carolina Constitution." *State v. Blakeney*, 245 N.C. App. 452, 459, 782 S.E.2d 88, 93 (2016). But the law recognizes that, in certain circumstances, a criminal defendant can forfeit this constitutional right through "egregious misconduct." *Simpkins*, 373 N.C. at 535, 838 S.E.2d at 446.

In *Simpkins*, the Supreme Court acknowledged that it had "never previously held that a criminal defendant in North Carolina can forfeit the right to counsel" but that this Court had done so in many published decisions. *Id*. at 530, 838 S.E.2d at 445. The Supreme Court synthesized our precedent and announced the test to apply in forfeiture cases: "A finding that a defendant has forfeited the right to counsel requires egregious dilatory or abusive conduct on the part of the defendant which undermines the purposes of the right to counsel." *Id*. at 541, 838 S.E.2d at 449.

The Court further divided this test into two distinct categories. First, forfeiture is appropriate if the defendant's behavior is so threatening or abusive towards counsel that it makes "the representation itself physically dangerous." *Id*. at 538, 838 S.E.2d at 447. There is no evidence in the record that suggests Patterson threatened or physically abused his counsel and thus this analysis from *Simpkins* is inapplicable.

Second, the Court held that forfeiture is permissible where "the defendant is attempting to obstruct the proceedings and prevent them from coming to completion."

*Id.* The Court offered some examples of the sort of conduct that might result in this finding of obstruction, such as a defendant who "refuses to obtain counsel after multiple opportunities to do so, refuses to say whether he or she wishes to proceed with counsel, refuses to participate in the proceedings, or continually hires and fires counsel and significantly delays the proceedings." *Id.*

Importantly, the Supreme Court rejected this Court's precedent holding that "willful actions on the part of the defendant that result in the absence of defense counsel," standing alone, can support forfeiture. *Id.* at 539 & n.7, 838 S.E.2d at 448 & n.7. Those willful actions amount to forfeiture only if they "obstruct the proceedings and prevent them from coming to completion." *Id.* at 538, 838 S.E.2d at 447.

Here, the record indicates that two of Patterson's attorneys withdrew because of Patterson's actions.[1] The first, Peregroy, explained that he sought to withdraw primarily because Patterson was uncooperative and insisted that his case should be dismissed based on an unfounded belief that the State made illegal recordings of his attorney-client communications.

The record also shows that Patterson had some conversations with his second counsel, Jennings, that Jennings described as "not civil." Jennings also explained that Patterson repeatedly changed his mind about whether or not he wanted Jennings to continue representing him, apparently stemming from his concern that any court-

---

[1] A third court-appointed attorney withdrew because of a "conflict" not identified in the record.

appointed counsel may have a favorable relationship with the District Attorney who was the victim in his criminal case. Finally, Jennings explained that Patterson insisted on proposing an unrealistic plea counteroffer to the State.

Importantly, nothing in the record indicates that Patterson's difficulty cooperating with these two court-appointed attorneys had delayed or obstructed the proceedings. Instead, what drove the trial court's forfeiture determination was the extreme difficulty of representing Patterson because of his argumentative attitude with counsel, his conspiratorial concerns about the State monitoring his communications, and his unfounded belief that his counsel was biased against him. It was, in effect, a determination that once Patterson forced two court-appointed attorneys to withdraw because of his own actions, he could not get any more bites at the apple. But that reasoning—which, to be fair, this Court had endorsed in earlier cases—was expressly rejected by the Supreme Court in *Simpkins. Id.* at 539 & n.7, 838 S.E.2d at 448 & n.7. Forfeiture requires egregious misconduct that obstructs or delays the proceedings, and the record simply does not support that determination here.

There is another wrinkle in this case, however. Although nothing in the record on appeal indicates that Patterson threatened or abused his counsel in a way that would meet the Supreme Court's criteria for forfeiture, the trial court's order repeatedly references Patterson's "abusive nature" and "abuse of counsel" and the

court explained that this conduct "is not going to change should we appoint new counsel."

The parties acknowledge that there were in-chambers discussions between the parties' respective counsel and the trial court for which there is no record that this Court can review. Thus, we cannot know whether the trial court relied on facts concerning Patterson's conduct that might show either that "the representation itself" was "physically dangerous" or that Patterson was "attempting to obstruct the proceedings and prevent them from coming to completion." *Id.* at 538, 838 S.E.2d at 447.

We therefore vacate Patterson's criminal judgments and remand for further proceedings. On remand, the trial court should conduct a new forfeiture hearing, applying the Supreme Court's test from *Simpkins*, and ensure that the parties put into the trial record all evidence supporting the court's determination. If the trial court determines that, based on the record before it, its initial forfeiture determination was appropriate, the court may enter a new forfeiture order and re-enter the previously imposed criminal judgments. If the record does not support a forfeiture determination under *Simpkins*, the court should appoint new counsel for Patterson and proceed with a new trial if the State chooses to pursue the charges.

## Conclusion

We vacate the trial court's judgments and remand for further proceedings.

VACATED AND REMANDED.

Judges ZACHARY and MURPHY concur.